[No. 21738. Department Two. August 28, 1929.]

HENRY M. SAAD, *Appellant,* v. MITCHELL LANGWORTHY, *Respondent.*[1]

*Williams & Cornelius,* for appellant.
*Post & Russell,* for respondent.

MILLARD, J.—Plaintiff commenced this action to recover for personal injuries and damages to his automobile, resulting from a collision with the automobile of the defendant, who, by cross-complaint, prayed recovery for damages to his automobile. The cause was tried to the court. Finding each party guilty of negligence which contributed to, and was the proximate cause of, the accident, the court entered judgment denying recovery to either party as against the other. The plaintiff has appealed.

About nine o'clock of the forenoon of July 30, 1928, the day was bright and the streets were dry in the city of Spokane, Washington. At that time, in that city, the collision of which complaint is made occurred within the intersection of Adams street and Seventh avenue, which are paved and intersect each other at right angles. Adams street runs north and south, is forty feet in width, and has a descending grade at the place of the accident of about two per cent towards the north. Seventh avenue runs east and west, is thirty feet wide

and has a down grade at the place of the accident of about five per cent to the west. On the southeast corner of the intersection, the shrubbery is high and overhangs the five foot sidewalk to such an extent that the driver of an automobile proceeding north on Adams street would not be within the view of the driver of, and would be unable to see, an automobile approaching from the east on Seventh avenue, until the front of the northbound car on Adams street was even with the curb line of Seventh avenue. Appellant was driving north on Adams street, intending to continue across the intersection. Respondent was driving west on Seventh avenue, intending to continue across the intersection. At what point each driver saw the other, is in dispute, as is the matter of the speed at which each was traveling. Each contends that the other was traveling at the rate of thirty miles an hour.

Appellant insists that he was traveling about twenty miles an hour between Seventh avenue and the parallel street immediately south thereof, and that he decreased his speed to about fifteen miles an hour just before arriving at the intersection. When the drivers of the cars should have seen each other, the front of respondent's car was then about thirty feet east of the intersection, and the front of appellant's car was on Adams street about even with the curb line of Seventh avenue. Appellant contends that Seventh avenue being thirty feet wide, his car would have had to move approximately fifteen feet to reach the intersecting point, and had respondent been traveling at lawful speed, the front of respondent's car would have been twenty feet east of appellant's car when the latter reached the intersecting point.

The respondent testified that his car was in the intersection before he saw the appellant's car; that he did not see appellant's automobile until it was eight or

ten feet distant. The respondent's testimony is as follows:

"Q. When you first saw this car of Saad's, you were already in the intersection? A. Yes. Q. Your whole car was in the intersection? A. Yes, I think so. Q. There was nothing that prevented your seeing the Saad car if you had looked? A. As far as the intersection itself goes, one cannot see cars coming down the street until you are very close, the shrubbery is such . . . A. After I was well on to the crossing, some noise, some factor of some kind made me look around to the left and I saw a car heading into me from the south on Adams street. I was well on to the crossing then and had no chance to do anything. I just had to sit there and let the car run into me . . . I think the car was eight or ten feet away . . . not farther than that away, before I saw it. I just saw it out of the side of the car as it came into my car from the side."

The respondent's car was struck amidships by appellant's automobile. It fairly appears from the evidence that the appellant was twenty feet from the point where the lines of travel would meet, when respondent was about thirty or thirty-five feet from the same point. Respondent was traveling at the rate of twenty miles an hour. Appellant was proceeding at the maximum rate of speed of fifteen miles an hour. He did not, when approaching the intersection or at any time, give any warning by blowing the horn or otherwise. He was familiar with the street intersection. He knew that the shrubbery on the southeast corner obstructed the view of Seventh avenue. Appellant traveled fifteen feet, after seeing respondent's car, before he applied his brakes. The appellant testified:

"Q. From the time when you first saw Dr. Langworthy's car, about which you have testified, how far did your car move until it came to a stop after the collision? A. From the time I saw Dr. Langworthy when I stopped? Q. Yes. A. About twenty-one feet from the right wheel; from the left wheel about eighteen feet.

Q. From the time that you applied your brakes until you came to a stop, how far? A. I should judge about fifteen feet. Q. What was his position in Seventh avenue when you first observed him? A. First I observed him about thirty feet from the intersection about the middle of the street.''

The appellant had the inferior right at the intersection. The court found, in substance, that, by reason of the shrubbery growing on the southeast corner of the intersection, a driver's view of the traffic on the street which he is approaching is obstructed. The appellant was guilty of negligence in not having his automobile under sufficient control and in not applying his brakes in time to permit the respondent, who was on his right, simultaneously approaching the point within the intersection where their lines of travel would intersect, to have the right of way. The respondent was guilty of negligence in driving his car at a speed of approximately twenty miles an hour.

Insisting that appellant was not guilty of any negligence proximately contributing to the collision, counsel for appellant argue that appellant may not be held negligent except on the theory that, in all cases where two cars come into collision when they meet at an intersection traveling at right angles, the one on the left is negligent; that the car on the right has an absolute right of way, without qualification; that the one on the left must at his peril in approaching an intersection know that he can clear before being struck by a car approaching from the right, irrespective of the speed at which the car on the right is approaching; that the one on the left has no right to assume that the car on the right will approach and enter the intersection in a lawful manner, but must proceed upon the theory that the one on the right may flagrantly violate the traffic laws and be prepared for that contingency.

Appellant, familiar with the intersection and with knowledge of the shrubbery on the southeast corner obstructing his view of westbound cars, entered the intersection at the maximum legal speed. He did not then or later sound his horn or give any warning to westbound vehicles of his approach. According to his own testimony, appellant did not see respondent's automobile until appellant's automobile was twenty feet south of and respondent's automobile was thirty feet east of the point where the lines of travel would intersect. Appellant then believed respondent was proceeding at the unlawful speed of thirty miles an hour. The appellant did not then attempt to stop or decrease the speed of his car, and did not apply his brakes until within five feet of respondent's car.

The statute provides,

"Drivers, when approaching public highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicles first enter and reach the intersection or not: . . ." Rem. 1927 Sup., § 6362-41, subd. 14.

The facts in the case at bar are similar to those in *Breithaupt v. Martin, ante* p. 192, 279 Pac. 568. In that case Judge Beals, speaking for the court, said:

"The rule laid down in this paragraph is clear and easily understood. Its careful observance will tend to reduce the number of collisions at street intersections.

"Under present conditions of street and highway traffic many problems arise which are difficult of adjustment, and the legislature, in endeavoring to cope with these problems, and realizing the defects inherent in the law as it was prior to the enactment of the section above quoted, sought to establish a rule more easily comprehended and observed than that theretofore in force. The basic rule always recognized in this country, that he who is on the right has the right of way, is generally understood and when embodied in

legislative enactment should be so construed and applied to different states of facts as to give effect to the legislative intent. While it is true as contended by respondent, that a statutory right of way is not absolute but relative [citing cases], in our opinion this rule is not applicable to the situation now before us.''

The general rule, in the absence of a statute or ordinance to the contrary, is that the one reaching the street intersection first has the right of way (*Hull v. Crescent Mfg. Co.*, 109 Wash. 129, 186 Pac. 322), and that others should approach with sufficient care to permit the exercise of such right without danger of collision. Though an automobilist, much nearer the intersection than another automobilist, has the right of way under that rule, yet it is his duty to stop if the situation be one that would impress him, as a reasonably prudent man, that a collision would likely otherwise occur. The statutory rule that the driver approaching a street intersection shall grant the right of way to a vehicle approaching from his right does not confer an absolute privilege. Regard must be had as to the distance of each from the intersection, and the speed of their approach.

A right of way, like the burden of proof, will establish precedence when rights might otherwise be balanced. It helps but little when without it the balance would be unequal. *Ward v. Clark*, 232 N. Y. 195, 133 N. E. 443. In *Grant v. Marshall*, 32 Del. 239, 121 Atl. 664, the court quoted with approval Berry on Automobiles, § 191.

'' 'The right of precedence at a crossing whether given by law or established by custom, has no proper application, except where the drivers of vehicles at intersecting streets approach the crossing so nearly at the same time and at such rates of speed that, if both proceed, each without regard to the other, a collision or interference between them is reasonably to be ap-

prehended. In such case it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield to him the right of way.' ' "

A greater duty rested upon the appellant, who was traveling in the disfavored direction, than on the respondent, who, under the statutory rule, was entitled to the right of way, to avoid a collision. The impairment of appellant's view by the shrubbery imposed the duty of slowing down his automobile and driving with caution, or even to stop, until he could obtain a clear view of Seventh avenue to the east. It was his duty to sound a signal of his approach, and to have his car under control when approaching the intersection.

"The primary duty in avoiding a collision at an intersection rests, however, on the driver who is proceeding in the disfavored direction, and where the two vehicles reach the intersection simultaneously, thus imposing on the driver who is proceeding in the disfavored direction a clear duty to yield the right of way, his failure to do so is frequently regarded as negligence as a matter of law. *A fortiori, where the facts clearly show that the driver proceeding in the disfavored direction not only failed to yield the right of way but also neglected other precautions at the intersection,* negligence as a matter of law may properly be imputed to him." 42 C. J., p. 986, § 707. (Italics ours.)

"The sounding of a signal of his approach by the driver who is proceeding in the disfavored direction does not relieve him of the duty to yield the right of way to a car proceeding in the favored direction. *But failure to sound a signal may aggravate the negligence* of one who does not intend, or is unable, to yield to another driver who is entitled to the right of way, *even though such other driver was aware of his approach."* 42 C. J., p. 988, § 707. (Italics ours.)

It was held in *Dauber v. Josephson,* 209 Mo. App. 531, 237 S. W. 149, that, in approaching an intersection where an obstruction prevents the driver from seeing approaching vehicles, the driver must keep a

vigilant lookout for vehicles, for to do so is only ordinary care. The case of *Dansky v. Kolimaki*, 125 Maine 72, 130 Atl. 871, is apposite. In that case, as in the case at bar, the party traveling in the disfavored direction was familiar with his surroundings. The court said:

"The defendant was acquainted with the road and with the crossing. He saw, or by reasonable vigilance might have seen, the plaintiff's car in time to 'give the right of way' to it. We are convinced that the defendant either negligently drove upon the crossing without looking, or more negligently drove upon it after looking and seeing the plaintiff's car approaching from the right and near at hand.

"It is no answer for the defendant to say that until he had almost reached the crossing itself, trees obscured his vision in the direction from which the plaintiff's car was coming. That circumstance should have increased his vigilance. He should have kept, or at all events tried to keep, his car so under control as to be able to 'give the right of way to those approaching from the right.' This he failed to do."

▓▓▓ Though the appellant had the right to assume that respondent and others approaching from the east would exercise due care, he could not, for that reason, omit any of the care the law required of him. The appellant did not have the right of way, and he is not absolved from the consequences of his own contributory negligence by the lack of care on the part of the respondent, who had the right of way. *St. Mary's Academy v. Newhagen*, 77 Colo. 471, 238 Pac. 21.

That respondent's automobile, approaching from the right, was sufficiently within the street intersection to have the right of way over appellant's automobile, approaching from the left, clearly appears from appellant's own testimony. Even though appellant was ten feet nearer the intersecting point than the respondent, who had the right of way, that did not warrant the

appellant, under the facts of this case, in concluding that he could cross the intersection in time to avoid a collision.

"The statute does not warrant drivers of vehicles in taking close chances. When a driver approaches a street intersection, if he sees a vehicle approaching from his right, and near enough so that there is reasonable danger of collision if both proceed, then it is his duty to yield the right of way." *Gibbs v. Almstrom,* 145 Minn. 35, 176 N. W. 173.

The respondent, traveling twenty miles an hour, or twenty-nine feet a second, had to travel thirty feet while appellant, traveling at the rate of twenty-two feet a second, had to proceed twenty feet, to arrive at the intersection of their lines of travel. Clearly the danger of collision was so apparent, and the statute not warranting the taking of close chances, it was the duty of appellant to yield the right of way. Fractions of seconds will not be regarded in determining whether or not the driver was negligent in not yielding the right of way to the vehicle approaching from his right.

In *Roe v. Kurtz,* 203 Iowa 906, 210 N. W. 550, the driver having the right of way did not see the car approaching from his left until the instant before the collision occurred. The court said that possibly the car traveling in the disfavored direction first entered the intersection, but the interval that elapsed before the car traveling in the favored direction reached the intersection could not have exceeded a fraction of a second. The driver having the right of way was the appellant, and the driver of the car approaching appellant on the left was the appellee. The court said:

"In determining whether he was negligent or not, regard will not be had to fractions of seconds. It must have been manifest to appellee, if he saw appellant's truck, that he could not proceed across the intersection without colliding therewith. In such situa-

tion it was clearly his duty to yield the right of way. The driver of appellant's car had the right to presume that the driver of a motor vehicle approaching the intersection from the left would observe the statute and yield the right of way to him.

"There can be no doubt but that the driver of a vehicle having the right of way may be guilty of contributory negligence. It is not difficult to conceive of situations in which it would be his duty to even yield the right of way given him by the statute. The purpose of the statute is to prevent, and not to license, negligence, and to, so far as possible, make street intersections zones of safety and not of danger. Had the driver of appellant's vehicle, some time before reaching the intersection, observed appellee's approach he would have had the right to assume that, if they were in a position, considering distance and speed, from which they were likely to arrive at the intersection practically simultaneously, appellee would observe the statute and yield him the right of way. Any other holding would practically destroy the effect of the statute."

That the driver on the left has the right to assume that the driver of another automobile approaching the street intersection from his right will not travel at an illegal speed, unless the contrary appears, may be conceded. However, appellant knew, so he testified, that respondent was traveling thirty miles an hour.

"Neither can the driver who is proceeding in the disfavored direction be excused for failure to yield the right of way by the fact that the car traveling in the favored direction is approaching the crossing at an excessive or unlawful rate of speed, or that the driver of such car is not driving in a reasonably careful manner or fails to give a signal on approaching the crossing." 42 C. J. p. 987, § 707.

The duty to yield would be rather intensified than diminished by the fact that the car traveling in the favored direction is seen traveling at an excessive and

illegal rate of speed. *Kinney v. King,* 47 Cal. App. 390.

Appellant contends that, if he were negligent, his negligence had ceased and he was using his best endeavors to extricate himself from the peril which confronted him; that respondent could have, and should have, seen his peril and avoided injuring him, therefore the last clear chance doctrine applies.

We find nothing to sustain this theory. It is clear from the evidence that respondent did not see appellant's automobile until it was immediately upon him, or not more than five feet south of his automobile, too late for anything to be done by respondent to avert the accident. It is also clear that the negligence of appellant terminated only with the collision of the two automobiles.

The evidence clearly preponderates in support of the trial court's findings and the judgment should be, and it is, affirmed.

MAIN, PARKER, TOLMAN, and FRENCH, JJ., concur.