GLADYS RHODES, *by her Guardian ad Litem H. R. Rhodes, Respondent*, v. HARRY W. JOHNSON, *Appellant*.[1]

*Gleeson & Gleeson*, for appellant.

*G. E. Lovell* and *Don F. Kizer*, for respondent.

MITCHELL, J.—Gladys Rhodes, nineteen years of age, brought this action to recover for personal injuries received by her in a collision between her father's family car, driven by her brother younger than she, and in which she was riding, and an automobile owned and driven by the defendant Johnson. He filed a cross-complaint to recover for damages to his automobile. Each driver was charged with negligence as the cause of the collision. On the trial, plaintiff recovered a verdict. From a judgment on the verdict, the defendant has appealed.

Appellant has made a number of assignments of error, but, in our opinion, the case must be disposed of on the insufficiency of respondent's evidence to sustain any recovery, as challenged by appellant's motion

[1]Reported in 299 Pac. 976.

for a non-suit at the close of plaintiff's case; and at the close of all the testimony on both sides, by appellant's motion for a directed verdict, the case being at that time no better for the plaintiff than it was at the close of her case in chief; and also by a motion for judgment notwithstanding the verdict.

We speak of one automobile as belonging to respondent, the other as belonging to the appellant. The accident happened near the hour of noon on December 23, in the intersection of two county roads which crossed at right angles. Respondent's car was going west on the right-hand side of what is known as the Broadway road; appellant's car was going south on its proper side of what is known as Park road. Neither road was an arterial highway. Around the intersection the country was level and the view unobstructed for a considerable distance in all directions, except for a residence situated within twenty-five feet of the roadway at the southeast corner of the intersection. The proof showed, as alleged in the complaint, that the respondent was injured in the accident.

As to the movement of the cars an appreciable time before and until the collision took place, we, in deciding the case, take the testimony of the driver of respondent's car and the testimony of another witness, called on her behalf, they being the only two witnesses who testified for her in this respect. This testimony is taken as being the most favorable to respondent. The driver of respondent's car testified as follows:

"Q. Now upon the corner to the left as you approach Park going west on Broadway what is there? A. There is a house and a few trees that obstructs the view from any cars going north on Park avenue. Q. What did you do in approaching Park avenue upon the day in question? A. I observed the crossing at approximately 25 yards. Q. How far did you look to the north or to your right hand? A. About twice as far as I was from

the crossing. Q. You say you were coming at what speed? A. About 25 miles an hour. Q. Was there anything visible at that time? A. No. Q. Did you look carefully? A. Yes. Q. And then what did you do? A. I turned my attention to the crossing at the left, for the vision wasn't clear and I couldn't see the car if it was approaching. Q. Kept on coming toward Park avenue? A. Yes. Q. When did you next look back to your right? A. Just as I was entering the intersection. Q. What did you see then? A. I saw the car coming from the north and it was coming right toward our car. Q. Was it going slowly or fast? A. I didn't have enough look to tell what speed it was coming. Q. What did you do when you saw the car? A. I applied my brakes and attempted to stop. Q. Were you struck before you stopped, or did you get stopped? A. I couldn't say as to that, it was—all happened so quick."

He further testified that there was no place along the road he was traveling within a hundred yards of the intersection going west from which he could not see a car coming from the north on Park road for at least half a mile. Also, he testified that the car he was driving was a touring car, and at the time was enclosed by curtains. As to his testimony upon his looking to the north and seeing no one when he was within twenty-five yards of the crossing, respondent's attorney says in his brief:

"Plaintiff [driver of respondent's car] did not see him [driver of the car coming from the north] for this reason; he had a closed car and the vision through the wind shield of a closed car is necessarily restricted."

That is, the driver was under no duty to see beyond the limited means for observation he, himself, had arranged. Of course, that argument cannot be accepted as a valid reason for the driver not seeing what he should and otherwise would have seen.

The other witness, upon this subject, was out by his house at the southeast corner of the intersection. He

testified that he had never driven a car, though he had frequently ridden in automobiles. He said that he saw the cars, and, with reference to the speed of respondent's car, he testified: ''Q. About how fast was the Rhodes boy going? A. I should judge between twenty and twenty-five miles an hour;'' and as to the speed of the other car, ''Q. What did you estimate was the speed of the Johnson car? A. I should say about fifty miles. That would be my estimate. I don't know whether I am right or not.''

Under the holding of the court at the trial, both upon matters of evidence and in instructing the jury, to neither of which any exception was taken by the respondent, it appears to be conceded that the negligence of the driver of respondent's car, if any, was chargeable equally to the respondent herself.

Laws of 1927, ch. 309, p. 802, § 41, subd. 14, provides as follows:

''Drivers, when approaching public highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicles first enter and reach the intersection or not: *Provided,* This paragraph shall not apply to drivers on arterial highways.'' Rem. 1927 Sup., § 6362-41.

The speed limit provided by law, applicable to intersections such as the one involved in this action, is found in Laws of 1927, ch. 309, p. 770, § 3, subd. 2, and provides for fifteen miles an hour when the driver's view is obstructed, with reference to which it further provides:

''A driver's view shall be deemed to be obstructed when at any time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of three hundred feet from such intersection; . . .'' Rem. 1927 Sup., § 6362-30.

Under this statute, as construed in *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, the intersection here presented an obstructed view, and traffic from all directions was bound by the speed limit fixed in the statute. In that case, speaking of this statute, it was said:

"It is a speed regulation, pointing out a situation where the speed of a motor vehicle must be limited to a certain number of miles per hour, and has the same relation to the general public as do all other speed regulations contained in the statute."

These statutes, one on the subject of the right of way and the other fixing a speed limit at highway intersections, are of considerable importance to the public, enacted as they were as a guide to traffic and to prevent accidents. That the driver of respondent's car violated both statutes and continued to do so down until the time of the happening of the accident, there can be no question, and in doing so was guilty of negligence as matter of law. Nor can there be any doubt that such negligence substantially contributed to the injuries the respondent received, and that it must be so held as matter of law.

The driver of respondent's car was on the left—the disfavored side under the statute, neither road being an arterial highway—and, as was said in *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, had the

". . . burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

This burden was not met by the respondent, and we think it must be so held as matter of law.

Judgment reversed, and the cause is remanded with directions to dismiss the action.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.