[No. 23395. Department One. February 17, 1932.]

JOHN C. STROUSE *et al., Respondents,* v. JULIA SMITH *et al., Appellants.*[1]

*Reynolds, Ballinger, Hutson & Boldt,* for appellant.
*George Olson* and *Frank Hunter,* for respondents.

HERMAN, J.—October 2, 1930, at about eleven o'clock a. m., plaintiff John C. Strouse was driving east on west Eighty-third street, in the city of Seattle. Defendants' employee, Cahail, was driving defendants' Ford delivery truck north on Sixth avenue northwest. A collision occurred near the center of the intersection of the streets mentioned. Plaintiffs brought suit to recover for property damage and personal injuries. The cause came on for trial in the superior court, and, at the conclusion of the testimony introduced by plaintiffs, defendants challenged the sufficiency thereof, and

[1]Reported in 8 P. (2d) 411.

moved the court to take the case from the jury and dismiss the cause, which motion was granted.

Thereafter, plaintiffs interposed a motion for a new trial upon the grounds of insufficiency of the evidence to sustain the decision, and error in law occurring at the trial. The court granted plaintiffs' motion for a new trial on the sole ground that it had erred in sustaining defendants' challenge to the sufficiency of the evidence. From the order granting plaintiffs a new trial, defendants appeal.

The testimony showed that, immediately prior to the accident, appellants' truck was being driven north on the left hand or west side of Sixth avenue northwest, at the unlawful speed of about thirty-five miles per hour. Respondent John C. Strouse (who will be hereinafter referred to as though he were the only respondent) was driving his Hudson car east on west Eighty-third street at from twelve to fourteen miles an hour. With him was John H. Christoe, a mechanic, who was attempting to locate the cause of a knock in the engine of respondent's car.

When the car was at the middle of the intersection, appellants' truck, traveling at an unlawful rate of speed, ran into the side of respondent's automobile, damaging it and inflicting personal injuries upon respondent. Respondent's witness, Mr. Christoe, who was riding with respondent, testified he saw the truck coming from the south, i. e., the right, fifty or sixty feet away from respondent's car. He was at the west curb line and the front of the Strouse car was in the intersection, when he first saw the truck. He then raised his hand and uttered an exclamation.

Rem. 1927 Sup., § 6362-41, subd. 14, provides:

"Drivers, when approaching public highway intersections, *shall look out for* and *give right of way* to vehicles on their right, simultaneously approaching a

given point within the intersection, and whether such vehicles first enter and reach the intersection or not; Provided, this paragraph shall not apply to drivers on arterial highways.'' (Italics ours.)

It will be noted that the statute requires that drivers, when approaching public highway intersections, shall look out for vehicles on their right simultaneously approaching a given point within the intersection. Obviously, the reason for the provision requiring drivers of vehicles to look to the right before they arrive at the intersection is to cause them to observe the approach of vehicles on their right.

Respondent, on direct examination, testified as follows:

''A. I looked to my left, before I got to the intersection I looked to my left and then as I got to the intersection I looked to my right. . . . Q. Did you see any vehicle coming in your direction? A. No. Q. When did you look to the right? A. Just as I entered the intersection I looked to the right. Q. That is, in this direction? A. Yes, sir. Q. How far was the front end of your car from the point of the west line of Sixth avenue northwest when you looked to the right? A. Just as I got to the intersection. Q. Had you gotten clear of the intersection? A. As my front end of the car came into the intersection I looked to the right. . . . Q. Did you see any vehicles in the street then (as the front end of his car came into the intersection)? A. No, sir, I did not. . . . Q. As you approached and did not see anything to the right or left what happened to your car? A. I drove on into the intersection, proceeded in on my way back. Q. From the time you left the curb until you got out into the intersection did you see any approaching car; if so, how far was it away from you? A. Just as I got right to the center of the intersection I heard—I seen another car coming. . . . Q. Did you look then? A. I did. Q. How far was the Ford away from you then? A. I had to look over my shoulder. I looked over my shoulder and I seen it coming off in this direction at me. Q. How far away from you? A. It looked like

it was six or eight feet; it was right on top of me. Q. Did you do anything to stop your car? A. I could not. Q. Why? A. I did not have time.''

Respondent's testimony conclusively establishes the fact that, except for his contributory negligence in failing to comply with the statute above referred to, the injury would not have occurred. He did not, *when approaching* the public highway intersection, look out for and give right of way to the vehicle on his right. He does not claim to have looked to the right until the front end of his car came into the intersection. That he did not then comply with the statute requiring drivers to look out for vehicles on their right, is clear from his testimony that he did not see any vehicles when he looked to the right as his car entered the intersection. The mandate of the statute is not complied with by a mere perfunctory turn of the head. When the law requires a driver to look, it places upon that individual the duty of seeing and observing. Mr. Christoe, who was riding with respondent, looked to the right as the car entered the intersection, and saw the truck fifty or sixty feet away.

The testimony in the case clearly demonstrates that, except for the failure of respondent, when approaching the intersection, to look out for and give right of way to the vehicle on his right, he would have sustained no injuries. We hold, as a matter of law, that respondent was guilty of contributory negligence, and that the trial court erred when it granted a new trial on the ground that it had erred in sustaining appellants' challenge to the sufficiency of the evidence.

Reversed and remanded, with instructions to deny the motion for new trial, and to enter a judgment of dismissal.

TOLMAN, C. J., BEELER, PARKER, and MITCHELL, JJ., concur.