[No. 29616. Department One. October 8, 1945.]

WILLIAM F. CALVERT, *Individually and as Administrator, Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

*A. C. Van Soelen* and *C. L. Conley,* for appellant.

*Rummens & Griffin,* for respondent.

SIMPSON, J.—Plaintiff brought this action on his own behalf and as administrator of the estate of his wife to recover damages resulting from a collision of his automobile with a bus, operated by the city of Seattle.

The complaint alleged that the city of Seattle operated a motor vehicle bus, which collided with an automobile driven by him on December 3, 1943; that he was driving in a westerly direction on Roy street and had practically completed the crossing of the intersection of Roy street and Fifth

[1]Reported in 162 P. (2d) 441.

avenue north when his car was run into by the city motor bus, which was driving in a southerly direction on Fifth avenue. It was further alleged that the bus was operated in a careless and reckless manner; that the operator of the bus did not keep any lookout, did not sound a horn, nor yield the right of way, nor apply the brakes. The balance of the complaint was devoted to allegations concerning the damages caused by the collision.

The answer contained a general denial of the allegations in the complaint relative to negligence on the part of the city bus driver and an affirmative defense, charging contributory negligence on the part of plaintiff driver.

The case was tried to the court sitting with a jury and resulted in a verdict in favor of plaintiff. After denying a motion for judgment n. o. v. or in the alternative for a new trial, the court entered a judgment upon the verdict. The city of Seattle has appealed.

Its assignments of error are: (a) Denying appellant's challenge to the sufficiency of the evidence; (b) denying the motions for judgment n. o. v. or for a new trial; and (c) entering judgment in favor of respondent.

The material facts are not in dispute. A brief summation of those most favorable to respondent will suffice for the points to be considered. The accident in question took place in the intersection of Roy street and Fifth avenue at about two-twenty p. m., December 3, 1943. Roy street, thirty feet wide, runs in an easterly-westerly direction; and Fifth avenue, forty-eight feet in width, extends in a northerly-southerly direction. Fifth avenue, in the direction in which the bus was going, was slightly downgrade. There was a sign on the right of Roy street, a few feet east of the east side of Fifth avenue, which read: "Bus crossing—Slow to 15 Mi." Respondent was driving toward the west and the city bus was going south. Both streets were paved. The day of the accident was clear and the pavement dry. The cars were traveling at a rate of fifteen to twenty miles per hour.

Respondent testified that, as he approached the intersection, he looked to his left and then to his right but did not

see the bus, and then proceeded to cross the intersection with his car in intermediate gear. He went through slowly and got across the center, at which time his wife said, "Look out for the bus," and was then hit by the bus. The left front corner of the bus struck the rear fender of his car and swung it around so that the right corner of the bus struck the door of the automobile, where his wife was sitting, and injured her. Pictures introduced in evidence show that the blow to the fender of respondent's car was over and slightly to the front of the right rear wheel.

Asked to be more specific about looking, respondent gave the following evidence:

"Q. As I understand you, as a matter of fact, you looked the full block and you didn't see the bus at all up there? A. I didn't see it at all. Q. If it was loading, you didn't see it? A. I didn't see it. Q. And you started then across in second gear? A. Yes. A. As you looked and observed up that street, then, there was nothing which was coming which kept you from crossing? A. I didn't keep looking. I looked up when I went into the intersection. The first—as I said—that I knew anything was when Mrs. Calvert said, 'Look out for the bus.' Q. I understand. But when you looked and could see up that block, there was nothing coming that you saw? A. No. Q. Did you think then that you had ample time to go across the street? A. I thought that I had ample time to get across. Q. Did you continue across in second gear? A. I did."

Respondent testified further that the collision occurred to the west of the center strip in the intersection and close to the west curb of Fifth avenue. Marks placed on the map of the intersection by another witness to show the point of collision corroborated respondent's testimony. Mrs. Calvert died and respondent had two broken ribs as results of the accident.

The evidence of other witnesses showed that the driver of the bus, immediately before the impact of the two vehicles, was not looking. "He was making change and then looking to the left and talking." The bus had stopped a block north of Roy street to take on passengers. One witness called by respondent testified that the automobile entered the inter-

section at a time when the bus was fifty feet north of Roy street.

■ Under the laws of this state, respondent was the disfavored driver. Rem. Rev. Stat., Vol. 7 A, § 6360-88 [P.P.C. § 295-27]; *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533.

Appellant contends that in an ordinary intersection accident case, where the disfavored driver is a plaintiff, there is a question for the jury: (1) Where the last clear chance doctrine is applicable; and (2) when the plaintiff sees the car on his right and offers evidence that he was deceived. Counsel for appellant argues that neither exception applies in this case for the reason that the claim of negligence, based upon the last clear chance originally claimed by respondent, was withdrawn and the question of being deceived was not submitted to the jury.

Respondent argues that under the instructions given by the court and not excepted to by appellant, there was only presented to the jury the common-law questions of negligence, contributory negligence, and proximate cause, this upon the theory that the instructions did not submit the question of deceit. Hence, the jury did not have before it the rules governing the respective rights of parties whose cars collided in an intersection.

The instructions of the court were full and complete, included the first two elements relating to crossing intersections, as outlined in the *Hadenfeldt* case, but did not contain one relative to respondent having been deceived, as contained in that case. It is clear that the court, in failing to give the instruction concerning deception, followed the cases of *Bowen v. Odland,* 200 Wash. 257, 93 P. (2d) 366; *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371; *Jamieson v. Taylor,* 1 Wn. (2d) 217, 95 P. (2d) 791; *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 119 P. (2d) 674; *Cramer v. Bock,* 21 Wn. (2d) 13, 149 P. (2d) 525. These cases held that it was improper to give the instruction relative to deceit in cases where there was no evidence upon which to base the theory that the disfavored driver was deceived by what he saw just prior to the collision.

■ We are unable to agree with the theory advanced by respondent. In the first place, respondent's testimony that he looked to his right but did not see the bus is of no advantage to him. The bus was on the street immediately to his right, and it will be conclusively presumed that he actually saw what could have been seen if he looked. *Bleiler v. Wolff, ante* p. 368, 161 P. (2d) 145.

■ Respondent could not claim that he was deceived by the actions of a driver he claims he did not see. Therefore, his actions must be governed by the second rule of the *Hadenfeldt* case, which reads:

"The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times."

The case at bar is governed by the following decisions: *Rhodes v. Johnson,* 163 Wash. 54, 299 Pac. 976; *Bowen v. Odland, supra; Department of Labor & Industries v. Hickle,* 1 Wn. (2d) 475, 96 P. (2d) 577; *Gavin v. Everton,* 19 Wn. (2d) 785, 144 P. (2d) 735.

In the *Rhodes* case this court reversed a judgment entered upon a verdict of a jury in favor of plaintiff, holding that the driver of a disfavored car had violated two rules of the road, one concerning speed and the other concerning right of way, and that, as a matter of law, it should be held that his negligence substantially contributed to the accident. In that case, the disfavored driver testified that when he approached the intersection, he looked to his right and saw nothing, and then, after glancing to his left, he continued to cross the street; that just as he was entering the intersection, he saw a car coming from his right, at which time he applied his brakes and attempted to stop. In referring to the *Hadenfeldt* case, this court held that the driver of the disfavored car had not met the burden thereby placed upon him.

The *Hickle* case is so exactly in point that we quote from it as follows, page 476:

"From what we have said, it will be noted that the plaintiff was the disfavored driver. He testified that, as he was approaching the intersection, he was traveling at a speed of

about twenty-five miles an hour; that, at a point about thirty or thirty-five feet from the south curb line of First avenue, he looked to his right; that, at that point, his view along First avenue to the east was limited to about one hundred and fifty feet by reason of the house and holly tree located on the lot at the southeast corner; that he slowed down to eighteen or nineteen miles per hour as he entered the intersection, but that he did not look again to his right and did not see the defendant's car at all; that the first intimation he had of the impending crash was when he heard the brakes being applied on the defendant's car; that the truck was struck at the right rear fender when the front end had passed the north curb line on First avenue. He also testified that he did not know who had the right of way. .

"This frank admission, we think, is the key to the problem. For it is apparent from his narrative that the plaintiff acted in ignorance, and with utter disregard, of his own obligations as the disfavored driver and of the rights of the defendant as the favored driver. The facts to which the plaintiff himself testified preclude recovery under the second and the fourth subdivisions of the rule laid down in *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, as applied in such cases as *Rhodes v. Johnson*, 163 Wash. 54, 299 Pac. 976; *Hoenig v. Kohl*, 182 Wash. 245, 46 P. (2d) 728, and *Fisher v. Hemrich Brewing Co.*, 183 Wash. 489, 49 P. (2d) 1, 53 P. (2d) 1198. What was said of the disfavored driver in the *Hoenig* case may well be said of the plaintiff here:

" 'If the appellant looked, as it is said he did, then he saw, or was charged with the duty of seeing, the approaching car, and was bound in law to know that its rights in the intersection were superior to his own. Being the disfavored driver, it was incumbent upon him to yield the right of way unless the situation was such as to clearly indicate that he could cross with a fair margin of safety. In the light of the . . . testimony, no reasonable mind can believe that the appellant exercised that care which the law required of him. The burden was upon the appellant to produce evidence of facts which would justify him in proceeding into the intersection. This, he did not do, and upon the uncontradicted testimony, reasonable minds must agree that the appellant was guilty of contributory negligence in driving into the intersection under the conditions shown.' "

To accept respondent's theory would be to put a premium upon negligence of the worst kind. Heedless, reckless, and

incompetent drivers could rush into busy intersections, cause irreparable damage, and then, by saying that they did not see the favored driver, put themselves in a more favorable position than careful and thoughtful operators of automobiles.

■ Respondent argues that the bus was stopped at a loading zone north of Roy street and says that apparently in a split second after respondent driver looked to his right and the street was clear, that the bus started up and came out of the loading zone and rolled on until the crash occurred. We have carefully examined and re-examined the statement of facts but have failed to find evidence which shows or tends to show that the bus was stopped at the loading zone, when respondent entered the intersection.

Respondent's contention is contradicted by the evidence of Esther Gray, a witness called by him, who testified that at the time the respondent's car entered the intersection the bus was back fifty feet.

We hold that respondent, as a matter of law, was guilty of contributory negligence and cannot recover for damages suffered by him.

The judgment is reversed with instructions to dismiss the action.

BEALS, C. J., STEINERT, and MALLERY, JJ., concur.

MILLARD, J. (dissenting)—I am of the view that a question of fact was presented to the jury and that the verdict should be affirmed.