[No. 30933. *En Banc.* February 10, 1950.]

CONDIE ROBERTS *et al., Appellants,* v. F. B. LEAHY *et al., Respondents.*[1]

[1]Reported in 214 P. (2d) 673.

*Cannon, McKevitt & Fraser* and *Frank J. Blade,* for appellants.

*Harry M. Morey,* for respondents.

Mallery, J.—Plaintiffs appeal from a judgment n.o.v. in an automobile accident case.

Fourth avenue and Howard are paved streets intersecting at right angles in Spokane. Fourth avenue runs east and west on the level. Howard street ascends southward at a moderate grade from Third avenue, three hundred twenty feet north, to Fourth avenue, intersecting it on the level, then ascends again to Fifth avenue. The accident occurred at this intersection at 8:30 p. m., November 9, 1946.

The appellant approached the intersection driving west on Fourth avenue. Respondent's taxi, proceeding south on Howard street, had the right of way as provided in Rem. Rev. Stat., Vol. 7A, § 6360-88 [P.P.C. § 295-27]. Respondent's right hand side of Howard street was obstructed midway in the block by a ditch that had been dug from the center line to the west curb. The earth had been piled on the south or uphill side of the ditch to a height of four feet and was marked by two lighted red lanterns. It was necessary for respondent's taxi to drive into the left side of the street to go around it.

Appellant's view to his right before reaching the intersection was obstructed by the Chancery building located twelve feet from the east curb of Howard street and ninety-nine feet north of Fourth avenue, a two-foot stone bulkhead near the south side of the Chancery building, five large deciduous trees planted in the north parking strip along Fourth avenue and in the east parking strip along Howard street, and by a car parked at the east curb of Howard street. The jury could well have found that a west-bound driver twenty-five feet from the intersection could look to his right, down Howard street, and see the center of the intersection of Third avenue and Howard street.

Appellant approached the intersection at about twenty-five miles an hour. At a point ten to fifteen feet east of the easterly part of the easterly pedestrian crosswalk at Howard street he slowed to twelve or fifteen miles an hour. At this point he looked to his right and had an unobstructed view down Howard street to the earth barricade with its lighted red lanterns on the west half and all the way to Third avenue on the east half. He saw no automobile approaching.

After appellant's automobile entered the intersection, his wife observed the headlights of respondent's vehicle ascending Howard street from Third avenue at high speed, headed directly for appellant's vehicle and very close. She screamed and, at the same moment, appellant observed, for the first time, the headlights coming directly at him. He accelerated his car in an attempt to avoid a collision. At the moment of impact his speed was from fifteen to twenty miles an hour.

Respondent's driver did not see appellant's vehicle until it was directly in front of him on Fourth avenue. He applied his brakes and swerved to the right to avoid a collision. The taxi traveled the fifty feet immediately before impact at a speed of thirty to thirty-five miles an hour.

The impact occurred in the northwest quarter of the intersection close to the westerly pedestrian crosswalk. The front of the taxi struck the right rear quarter of appellant's vehicle so as to catapult it southwesterly and cause it to roll over one and a quarter times. It came to rest three to five feet north of the south curb of Fourth avenue and twenty-five to forty feet west of the curb of Howard street. After impact the taxi proceeded into the southwesterly part of the intersection before it came to rest.

Respondent does not deny his driver's negligence, but moved for judgment n.o.v. on the ground that appellant, the disfavored driver, was guilty of contributory negligence as a matter of law in not yielding the right of way to the taxi on his right.

When a favored vehicle is within view to the right of the disfavored vehicle it will be conclusively held that the disfavored driver actually saw what he could have seen if he had performed the duty of looking. His failure to do so is negligence as a matter of law. *Rhodes v. Johnson,* 163 Wash. 54, 299 Pac. 976; *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411; *Hoenig v. Kohl,* 182 Wash. 245, 46 P. (2d) 728; *Chess v. Reynolds,* 189 Wash. 547, 66 P. (2d) 297; *Hefner v. Pattee,* 1 Wn. (2d) 607, 617, 96 P. (2d) 583; *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 373, 119 P. (2d) 674; *Bleiler v. Wolff,* 23 Wn. (2d) 368, 161 P. (2d) 145; *Calvert v. Seattle,* 23 Wn. (2d) 817, 162 P. (2d) 441; *Plenderlieth v. McGuire,* 27 Wn. (2d) 841, 180 P. (2d) 808; *McClellan v. Great Western Fuel Co.,* 32 Wn. (2d) 202, 201 P. (2d) 221. See, also, *Johnson v. Washington Route,* 121 Wash. 608, 209 Pac. 1100, and *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, where many cases are cited.

However, if the disfavored driver looks to his right from a *proper place* and cannot see the favored vehicle because it is hidden by a condition *in the street,* he has discharged his duty of using due care and is not guilty of negligence as a matter of law in proceeding into the intersection.

"A number of times this court has held that, when a person testifies that he looked and did not see an object, which plainly he could have seen, that he will not be heard to say that he looked and did not see. In other words, the situation is the same as though he had looked and seen the object." *Silverstein v. Adams, supra.*

This rule is not applicable in the instant situation, where the issue of fact is whether or not this condition in the traveled part of the street hid the favored vehicle. Testimony that the disfavored driver looked and did not see it, if believable, is evidence that it was hidden. It raises a question of fact for the jury to determine.

We now pass to the question of whether the physical situation presents facts so conclusive in their necessary implications as to make it unbelievable to reasonable minds

that the taxi was hidden by the barricade when appellant entered the intersection.

An examination of the diagram of the vicinity of the collision indicates that when appellant looked to his right on entering the intersection he was at ". . . about the pedestrian lane." From this position the barricade would have obscured from his view of Howard street an area the shape of an acute right triangle. The base of this triangle would have measured twenty-five feet along the face of the barricade, the long leg of the triangle would have measured about one hundred feet north along the west curb of Howard street and the hypotenuse would have measured about one hundred five feet extending from the east end of the barricade, which was in the center of Howard street, to the far end of the long leg.

If, under the evidence most favorable to appellant, the taxi could have been within the area of this triangle when appellant entered the intersection, the question cannot be resolved against him by the court as *a matter of law.*

Respondent's driver testified that a car going in the opposite direction passed him near the barricade. What effect this may have had in keeping the taxi on its own side of the street and within the obscured area is not a matter of law for us to pass upon. It is enough to say that from the point where appellant looked down Howard street, he traveled about sixty-five feet to the point of impact in about three seconds according to the estimated speed of his car. If respondent's taxi was behind the obstruction within the obscured area at the time appellant looked and did not see it, it would have had to travel about one hundred eighty feet in the same time. This would have been possible at forty miles an hour, a speed possible within the evidence in the case.

Since the accident could have happened as appellant said it did, reasonable minds could reach different conclusions regarding his contributory negligence. Therefore, it was a question for the jury. See *Beck v. Dye,* 200 Wash. 1, 6, 92 P. (2d) 1113, 127 A. L. R. 1022; *Billingsley v. Rovig-*

*Temple Co.,* 16 Wn. (2d) 202, 204, 133 P. (2d) 265, 38 Am. Jur. 1052; and the cases cited therein; *Gavin v. Everton,* 19 Wn. (2d) 785, 789, 144 P. (2d) 735; *McBeach v. Northern Pac. R. Co.,* 32 Wn. (2d) 910, 204 P. (2d) 248.

The judgment is reversed with instructions to reinstate the verdict of the jury.

ROBINSON, HILL, GRADY, and HAMLEY, JJ., concur.

SIMPSON, C. J. (dissenting)—I write this dissent with the hope that my fellow judges may recede from their position as reflected in the majority opinion and, if unsuccessful, to call attention to the fact that this becomes a landmark case in that it extends the exceptions to Rem. Rev. Stat., Vol. 7A, § 6360-88 [P.P.C. § 295-27] as contained in element four of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533. The effect of the majority opinion is to do away with the statutory provisions and puts those who drive into street or highway intersections on an even basis, in so far as their rights are concerned. In fact, it does away with the "favored driver" provisions contained in the statute.

It is necessary, in order to prove my assertion, that I state the situation confronting the drivers in this case as indicated in the statement of facts.

Fourth avenue and Howard street intersect at right angles in the city of Spokane. Fourth avenue extends east and west on a level plane. Howard street ascends at a moderate grade from Third avenue. Third avenue is three hundred twenty-two and one-half feet north of the intersection of Fourth avenue and Howard street.

The accident occurred at the intersection of Howard street and Fourth avenue at eight-thirty p. m., November 9, 1946. Appellant approached the intersection while driving west on Fourth avenue. Respondent's taxi was proceeding south on Howard street and had the right of way as it approached the intersection. Rem. Rev. Stat., Vol. 7A, § 6360-88. (As a matter of convenience, the drivers of the respective cars will be referred to as "appellant" and "respondent.")

In the middle of the block, between Third and Fourth avenues on Howard street, a ditch had been dug from near the center of Howard street in a southwesterly direction to the west curb of Howard street for the purpose of making a sewer connection to a motor company building being constructed on the northwest corner of Fourth and Howard. The earth had been piled on the south or uphill side of the ditch to a height of three or four feet, with red lanterns placed thereon as a warning.

Appellant Condie Roberts testified:

"Q. Did you cross Washington Street and Fourth Avenue? A. I did. Q. Westward? A. Yes sir. Q. Is that a stop sign at Washington and Fourth? A. Yes sir. Q. And then you traveled on across Washington and over to Stevens. That's the next street, isn't it? A. Yes sir. Q. And across Stevens, and went on toward Howard? A. Yes sir. Q. What rate of speed were you going at when you traveled past Stevens westward toward Howard Street? A. I would say 20 miles an hour. Q. And did you look to the left and to the right for other traffic as you approached Howard Street? A. Yes sir. Q. Did you see any traffic coming north down the hill on Howard Street? A. No sir. Q. Did you keep up that speed, or did you increase it, or did you slow up as you got closer to Howard Street? A. I slowed up. Q. How far from the curb—the east curb—of Howard street, approximately, were you when you looked to the right just before entering the intersection? A. I would say about the pedestrian lane. Q. And how far down Howard Street could you see? A. North or south? Q. North. A. I could see clear to Third, passed[t] Third. Q. Did you see any evidence of any automobile coming south up Howard Street— A. (Interposing) I never did. Q. —when you looked there? A. I never did.

"Q. . . . Now, start at the point where you had looked to the right and could not see a car all the way down Third Avenue. A. I proceeded to go on down Howard Street; I looked to the north and I see no lights or nothing. I never come to a complete stop. I just come up to the intersection and looked to the north and to the south and I didn't see a thing, so I proceeded to go on through the intersection. *I got just—oh, I'd say the front of my car across the yellow line and my wife screamed* [italics mine], and the time I

looked his lights came up and flashed in my face on the right."

Appellant introduced in evidence a topographic survey map. It was drawn to a scale of one inch to fifteen feet. Testifying on direct examination, appellant said he first looked to his right at a point marked by him on the map as "1 C. R." That point was forty-five feet east of Howard street, and three feet south of the north curb of Fourth avenue. When he was at that point, he said he could "see to the lights on Third Avenue." When he looked to the left, he had arrived at a point he marked on the map exhibit as "2 C. R." This point was thirty-six feet east of Howard street, and three feet south of the north curb of Fourth avenue. He testified that he slowed up to fifteen miles per hour at a point he marked as "3." This point was seven and one-half feet east of Howard street, and three feet south of the north curb of Fourth avenue. At the point marked 3, he said he looked to the right and did not see any cars approaching on Howard street. From points 1, 2 and 3 he could see to his right beyond Third avenue. The place he marked on the map as point 4, was where he first saw the lights of respondent's car. This point was in the middle of Howard street in a line just west of point 3. He indicated point "X" as the place of collision. That spot was fifteen feet southwest of point 4 and one hundred eighty feet south of the pile of earth.

The map shows that the pile of earth on Howard street was one hundred sixty-seven feet north of point 3, and one hundred seventy-nine feet north of point one.

Appellant testified that at point 3 he increased his speed to twenty miles per hour. At that rate of speed he traveled "twenty-nine feet per second." *Saad v. Langworthy*, 153 Wash. 598, 280 Pac. 74. At that rate, it took him one and one-half seconds to reach the point of collision.

Appellant's brief states that respondent's

". . . taxicab had been driven at a speed of 50 to 60 miles per hour southward while approaching the dirt pile and barricade (uphill) and then to its left side of the cen-

terline of Howard Street, around the east end of the open sewer-connection ditch and its protective pile of dirt and wooden barricade, and continued at that very high rate of speed until the taxicab was near the top of the hill at the northerly part of the northerly (east-west) pedestrian cross-walk of the intersection."

There is no evidence whatever to prove that statement. Following is all the evidence which relates to the speed of respondent's taxicab.

Witness Doyle said that he saw respondent's cab when it was "approximately 50 feet from the intersection" and it was traveling "from 30 to 35 miles." Asked what the difference was in the speed of appellant's and respondent's vehicles, Mr. Doyle testified, "About 5 miles an hour or 10 miles an hour, pretty close to that."

Mrs. Helen Doeleman, who was with Mr. Doyle, stated that she saw respondent's car as it approached the intersection and that it was traveling at a speed of "between 20 and 25." She saw respondent's vehicle when it was "three or four car lengths" from the one operated by appellant.

These witnesses were called by appellants and they are bound by the testimony.

An examination of the briefs in the cases of *Calvert v. Seattle,* 23 Wn. (2d) 817, 162 P. (2d) 441, and *McClellan v. Great Western Fuel Co.,* 32 Wn. (2d) 202, 201 P. (2d) 221, to which I shall refer in another portion of this dissent, shows that arguments made in favor of the disfavored drivers were similar to those made by appellants in this case. In the cited cases, however, this court reversed judgments, based on jury verdicts in favor of the disfavored drivers.

In 1927 the legislature passed an act known as Rem. Rev. Stat., § 6362-41, subsection 14, which reads:

" . . . Drivers, when approaching public highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicles

first enter and reach the intersection or not: Provided, this paragraph shall not apply to drivers on arterial highways."

In 1937 the above statute was repealed, and the new act is now known as Rem. Rev. Stat., Vol. 7A, § 6360-88. It reads as follows:

"Look out approaching intersections—Vehicles to right— Arterial roads. It shall be the duty of every operator of any vehicle on approaching public highway intersections to look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicle first enter and reach the intersection or not: *Provided,* This section shall not apply to operators on arterial public highways."

It will be noted that the two statutes are almost identical.

In 1929, this court decided the case of *Saad v. Langworthy,* 153 Wash. 598, 280 Pac. 74. In deciding that case, it was held that when two cars collided at an intersection they were simultaneously approaching the point where the accident occurred. The facts in that case are so like those in the case at bar that I quote them as follows:

"About nine o'clock of the forenoon of July 30, 1928, the day was bright and the streets were dry in the city of Spokane, Washington. At that time, in that city, the collision of which complaint is made occurred within the intersection of Adams street and Seventh avenue, which are paved and intersect each other at right angles. Adams street runs north and south, is forty feet in width, and has a descending grade at the place of the accident of about two per cent towards the north. Seventh avenue runs east and west, is thirty feet wide and has a down grade at the place of the accident of about five per cent to the west. On the southeast corner of the intersection, the shrubbery is high and overhangs the five foot sidewalk to such an extent that the driver of an automobile proceeding north on Adams street would not be within the view of the driver of, and would be unable to see, an automible approaching from the east on Seventh avenue, until the front of the northbound car on Adams street was even with the curb line of Seventh avenue. Appellant was driving north on Adams street, intending to continue across the intersection. Respondent was driving west on Seventh avenue, intending to continue across the intersection."

In deciding that case, we held, p. 605:

"The impairment of appellant's view by the shrubbery imposed the duty of slowing down his automobile and driving with caution, *or even to stop,* [Italics mine] until he could obtain a clear view of Seventh avenue to the east."

The case of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, written by Judge Tolman, laid down four rules interpreting the rights of drivers approaching an intersection. These rules, which have been adhered to in our cases since the opinion was written, read:

"(1) All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

"(2) The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

"(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

"(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

*Rhodes v. Johnson,* 163 Wash. 54, 299 Pac. 976; *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411; *Sather v. Blodgett,* 169 Wash. 25, 13 P. (2d) 60; *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371; *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 119 P. (2d) 674; *Calvert v. Seattle,* 23 Wn. (2d) 817, 162 P. (2d) 441; *McClellan v. Great Western Fuel Co.,* 32 Wn. (2d) 202, 201 P. (2d) 221, and *Shultes v. Halpin,* 33 Wn. (2d) 294, 205 P. (2d) 1201, hold that failure to look out for and give right of way to a vehicle on the right, simultaneously approaching a given point within the intersection, constitutes negligence as a matter of law.

In the *Hauswirth* case, this court decided that where two cars collided within an intersection, the disfavored driver

never saw the other car at all and therefore could not contend that he had been deceived by any wrongful operation on the part of the favored driver, and that the two cars were simultaneously approaching a given point within the intersection.

The case of *McClellan v. Great Western Fuel Co., supra,* is exactly in point. The accident concerned in that case occurred at the intersection of Pacific avenue and Haven street in the city of Spokane at about 11:45 a. m. Pacific avenue extends in an easterly and westerly direction and Haven street runs north and south. Respondents' truck was traveling westerly on Pacific avenue. Appellants' truck was traveling south on Haven street which was twenty-six feet in width. Appellants' truck was traveling fast on its left side of the street. As respondents' disfavored driver approached the intersection he looked to the right at a place where a row of trees extended through the entire block between the sidewalk and curb on Haven street entirely obstructing his view. The opinion is so conclusive of the question presented here that I quote it as follows:

"The respondents were guilty of contributory negligence as a matter of law in not yielding the right of way to the appellants. The respondents attempt to justify their violation of the right of way statute by contending that they had a right to assume that traffic from their right would be on its proper side of the street, where it could be seen from the position whence they looked to the right, and that they had no duty to ascertain that no vehicle was simultaneously approaching the intersection on the obscured and wrong half of the street.

"This argument would be quite persuasive if it were sustained by the facts in the case, but we think they cannot be heard to say that they had no duty to see the appellants' truck because most of it was on the wrong side of the street; since, if they saw the part of the truck that was in its own right-hand lane, they would have been aware of its presence and its right to the right of way. [Citing cases.]

"This same factor defeats their further contention that they have a right to invoke the rule of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, upon the ground that they were deceived by the truck 'stalking' the respondents by

slipping down in the hidden half of the street. See *Boyle v. Lewis,* 30 Wn. (2d) 665, 193 P. (2d) 332; *Calvert v. Seattle,* 23 Wn. (2d) 817, 162 P. (2d) 441. Some part of appellants' truck was there to be seen on its right side of the street, and they cannot claim they were deceived when they did not see the part they had a duty to see. Neither can they claim that an emergency existed because of their failure to see that which was to be seen which would soften the rules of contributory negligence."

The approval of this and the above case leaves this court in the peculiar position of holding a disfavored driver guilty of contributory negligence when cars approaching to his right are hidden by trees, but innocent when they are hidden by an earth mound.

Another case in point is that of *Calvert v. Seattle, supra.* The evidence given by the disfavored driver in that case is so similar to that given by the appellant here that I set it out.

" 'Q. As I understand you, as a matter of fact, you looked the full block and you didn't see the bus at all up there? A. I didn't see it at all. Q. If it was loading, you didn't see it? A. I didn't see it. Q. And you started then across in second gear? A. Yes. Q. As you looked and observed up that street, then, there was nothing which was coming which kept you from crossing? A. I didn't keep looking. I looked up when I went into the intersection. The first— as I said—that I knew anything was when Mrs. Calvert said, "Look out for the bus." Q. I understand. But when you looked and could see up that block, there was nothing coming that you saw? A. No. Q. Did you think then that you had ample time to go across the street? A. I thought that I had ample time to get across. Q. Did you continue across in second gear? A. I did.' "

The rule to be followed in cases of this nature is ably set forth in the following excerpt from the *Delsman* case, p. 390:

"The burden to avoid colliding with a car approaching from his right rests heavily upon the disfavored driver. A clear and unambiguous statute imposes this burden, and the ingrafting of exceptions upon this sound and wholesome rule of the road would tend only to confusion and lead drivers occupying the disfavored position under the statute

to think that they might somehow escape the burden imposed upon them by law and throw the blame for avoidable accidents upon another. Speed is of much less importance than safety, and, under modern traffic conditions, safety, to a great extent, depends upon careful and prudent observation both of natural physical conditions and of other vehicles using the highway, as well as of pedestrians. We are in accord with the rules laid down in the *Hadenfeldt* case, but are not inclined to extend the exception therein provided for."

It is argued that the respondent's car was behind the mound of earth at the times appellant looked to his right, and then, as it came from behind it, the rays of light would be directed in a southwesterly direction so that they could not be seen by appellant. To say that the lights so directed could not be seen by appellant at distances of one hundred sixty-seven and one hundred seventy-nine feet, when at the same time he could see another street three hundred twenty-two feet away, strains the credulity of anyone who has driven a car at night. We, as judges, should not deny facts which we as individuals know to be true. As a matter of fact, lights on a car so driven, being unusual, would immediately challenge the attention of anyone looking in that direction.

It was impossible, as shown by the undisputed facts, for respondent's taxicab to have been hidden behind the dirt pile and to have come around it and have been driven one hundred eighty feet to hit appellant's car in the time that elapsed after appellant had looked from point 3. In the first place, the earth mound was not high enough to hide the car; in the second place, respondent's car could travel only 51.33 feet per second while going at a speed of thirty-five miles per hour. It could have traveled but seventy-seven feet during the one and a half seconds appellant consumed in traveling from point 3 to X, 3 being the point where he last looked to his right, and X being the place of collision. The taxicab was in plain sight when appellant started across the intersection. His witnesses saw the taxicab. Ap-

pellant did not see it because he did not look as the statute directed.

The judgment of the trial court was correct and should be affirmed.

BEALS, SCHWELLENBACH, and DONWORTH, JJ., concur with SIMPSON, C. J.

---

May 1, 1950. Petition for rehearing denied.