[No. 27551.   Department Two.   August 31, 1939.]

ADRIAN DELSMAN *et al., Appellants,* v. ALBERT BERTOTTI, *Respondent.*[1]

¹Reported in 93 P. (2d) 371.

*Kahin, Carmody, Schramm & Kellogg,* for appellants.

*Houghton, Cluck & Coughlin* and *Emil P. Schubat,* for respondent.

BEALS, J.—East Seventy-seventh street in the city of Seattle runs east and west and is crossed at right angles by Fifteenth avenue northeast. East of the intersection, Seventy-seventh street slopes down at a 5.82 per cent grade, and north of the intersection Fifteenth avenue slopes down at a grade of less than one-half of one per cent. Each street is paved, the paved portion of Fifteenth avenue being forty-two feet in width, that of Seventy-seventh street being twenty-five feet wide. Each street has concrete sidewalks, the parking strip on Fifteenth avenue between the street curb and the edge of the sidewalk being five and one-half feet wide. Along Fifteenth avenue, northerly from the sidewalk on Seventy-seventh street, stands a thick, high hedge, about twelve feet back from the east line of the pavement, which obstructs the view of Fifteenth avenue as one approaches that street from the east along Seventy-seventh street. There is a small gap in this hedge, through which an automobile driver, approaching Fifteenth avenue from the east on Seventy-seventh street, can obtain a very restricted glimpse across a small portion of Fifteenth avenue, some distance to the north of the intersection.

Plaintiff Adrian Delsman (who will be referred to as though he were the sole party plaintiff) resides in

the neighborhood, and owns a garage which opens upon an alley paralleling Fifteenth avenue, which alley intersects Seventy-seventh street some distance to the east of the intersection.

Early on the morning of April 5, 1938, plaintiff, driving his Chevrolet automobile, left his garage and proceeded south along the alley to Seventy-seventh street. He turned west upon that street and proceeded slowly upgrade in a westerly direction for about a block and a half, when he approached the intersection of Seventy-seventh street and Fifteenth avenue. As he approached the intersection, he passed a "Slow" sign and stopped his car. He had looked through the break in the hedge, and through that gap saw no approaching traffic on Fifteenth avenue. He testified that he stopped at a point where he could see in front of the hedge, and that, when he stopped, he could see to his right along Fifteenth avenue about two hundred feet; that, seeing no traffic approaching, he put his car into low gear and started across Fifteenth avenue, looking to his left, and as he looked to his left he shifted into intermediate gear; that, after satisfying himself that no traffic was approaching from the left, he again looked to his right, seeing an approaching truck; that, realizing his danger, he shifted into high gear, stepped on the gas, and endeavored to avoid a collision, swinging his car a little to his left; that notwithstanding his efforts to escape, the truck struck the rear right wheel of his car. As a result of the collision, Delsman suffered severe injuries, including a skull fracture, and later brought suit against Albert Bertotti, the owner of the truck with which plaintiff's car collided.

In his complaint, plaintiff alleged that defendant's driver was negligent, in that he was driving at a speed in excess of thirty-five miles per hour; that the driver failed to keep sufficient lookout or give notice of

his approach; and that the driver failed to avail himself of an opportunity afforded him to avoid the collision, by applying his brakes or turning his truck. The defendant denied all negligence on the part of his employee and pleaded contributory negligence on the part of plaintiff, who, by his reply, denied any negligence on his part.

The action was called for trial before a jury, and, at the close of plaintiff's case, the defendant challenged the sufficiency of the evidence and moved to dismiss upon the ground that it appeared from plaintiff's own evidence that plaintiff had been guilty of negligence which materially and proximately contributed to the accident. The court sustained the challenge and dismissed the action with prejudice. From the judgment of dismissal, plaintiff has appealed, assigning error upon the exclusion of certain testimony upon defendant's objection; upon the ruling of the trial court sustaining defendant's challenge to the sufficiency of the evidence; and upon the entry of judgment of dismissal.

It does not appear that, on the morning of the accident, the visibility was poor or that driving was in any way difficult. Appellant, of course, was the disfavored driver, and on approaching the intersection, it was his duty, pursuant to Rem. Rev. Stat., Vol. 7A, § 6360-88 [P. C. § 2696-846] (Laws of 1937, chapter 189, p. 899, § 88), to look out for and give right of way to any vehicle approaching from his right. Respondent's truck was approaching the intersection from appellant's right, and of course was clearly within the range of vision of any person looking north along Fifteenth avenue. According to the testimony of certain of appellant's witnesses, respondent's truck was proceeding at a speed of from thirty-eight to forty-five miles per hour, and neither slowed down nor varied its course prior to striking appellant's car.

For the purposes of this appeal, it may be assumed that respondent's driver was proceeding at an unlawful rate of speed, the question to be determined being whether or not the trial court erred in ruling that, as matter of law, appellant was also negligent, and that his negligence in a material degree proximately contributed to the accident. Appellant strenuously contends that the evidence which he produced made a case for the jury, and that the trial court erred in determining the issue as matter of law.

Appellant testified that, after his glance through the break in the hedge, which disclosed no traffic on Fifteenth avenue, he stopped his car with its front about even with the east line of the sidewalk on Fifteenth avenue, and that, from his position when he stopped his car, he could see north along Fifteenth avenue a distance of about two hundred feet. Of course, appellant's view along Fifteenth avenue was to some extent restricted by the hedge. He did not have the benefit of observation from a point where he could see the entire width of the street. He stated positively that he did not see the truck, and that, if he had seen it, he would not have attempted to cross the intersection ahead of it. He looked to his left, as traffic from that direction would be the first traffic he would meet, and, seeing no vehicle approaching from that direction, proceeded to cross the intersection in low gear. When he again looked to his right, he saw the truck approaching rapidly. Appellant was just shifting into high gear when he saw the truck, and he continued shifting and stepped on the gas, in an attempt to avoid a collision.

When appellant first saw the truck, it was about seventy-five feet distant. Appellant stated that, in his opinion, after he first saw the truck, his car proceeded about its own length, or possibly a little more, before the collision. Appellant was familiar with the inter-

section, having often driven across it from the east, and knew the position of the "Slow" sign and of the hedge, and that the hedge obscured the view from the east along Fifteenth avenue.

Manifestly, the intersection presented a dangerous condition, and one which required care and attention on the part of a driver approaching from the east. No such driver could safely rely upon the glimpse of Fifteenth avenue which he might obtain through the gap in the hedge, such a glance being too restricted to enable such a driver to form any opinion of value as to whether or not traffic was approaching from the north along Fifteenth avenue.

Appellant relied upon his observation north along Fifteenth avenue from the position which he occupied when he stopped his car. He was then, in the front seat of his car, as he showed by marking a map of the intersection, which is in evidence, a little to the east of the east line of the hedge, extended south. He testified definitely that, from this point, his view north was restricted to approximately two hundred feet, his vision, of course, not being straight down the avenue, but limited to an angle by the southerly end of the hedge. From a complete stop at this point, appellant started his car, went into low gear, proceeded to cross the intersection, and, as he testified, did not see the approaching truck until it was within seventy-five feet of his car. Appellant testified, on cross-examination, that, if he had, from the easterly curb line, looked to his right and seen the approaching truck, he could have stopped his car in the easterly half .of the intersection. He also testified that, if he had looked to the right when from his position in the driver's seat he was approximately even with the sidewalk on Fifteenth avenue, he would have had a practically unlimited vision north on Fifteenth avenue.

One of appellant's witnesses, Mr. Pinkerton Day, who was standing on the northwest corner of the intersection waiting for a street car, and saw both the truck and appellant's car, testified that, as the front of appellant's car crossed the east line of Fifteenth avenue, the front of respondent's truck was approximately forty-eight or fifty feet north of the north curb line of Seventy-seventh street. This witness stated that he had seen the truck as far up Fifteenth avenue as Eightieth street.

The trial court did not err in ruling that, as matter of law, appellant was guilty of contributory negligence which barred his recovery in this action. The northeast corner of the intersection was obstructed. Under the law, appellant was required to look out for, and yield the right of way to, a vehicle approaching from his right. The observation which a driver in appellant's position is required to make is observation from a point at which he can see, and decide when he can proceed within a reasonable margin of safety, not from a point back from the intersecting street, from which his view is seriously obstructed. Appellant, at a point approximately twelve feet east of the east curb line of Fifteenth avenue, undertook to start his car from a dead stop and proceed across that highway, without looking north along that street from the east curb line on Fifteenth avenue, from which point he would have had a clear view of approaching traffic, and would, of course, have seen respondent's truck approaching from his right.

Appellant argues that, under the rules laid down in the case of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, he was deceived by the fact that the truck was moving at an excessive rate of speed. Appellant relies upon the *Hadenfeldt* case, contending that the facts in the two cases are practically identical. In the

case cited, the opinion calls attention to the fact that the disfavored driver looked to his right from the curb line of the intersecting street and saw approaching the car with which he subsequently collided. Under the peculiar circumstances of the case, this court held that whether or not the disfavored driver had acted in a reasonably prudent manner, in consideration of all the evidence, was for the jury to determine. The question to be determined involved a car which the disfavored driver saw, not a car which he did not see, and the disfavored driver looked to his right from a point from which he could see all approaching traffic. The last of the four elements of the rule laid down in the *Hadenfeldt* case does not apply here, as appellant testified that he did not see respondent's truck until it was too late for him to stop to avoid the collision, and that, if he had seen the truck from the east margin of Fifteenth avenue, as he must have seen it, had he looked, he would not have attempted to cross the intersection ahead of it.

A somewhat similar situation was presented in the recent case of *Bowen v. Odland, ante* p. 257, 93 P. (2d) 366, in which we held that the last portion of the rule of the *Hadenfeldt* case was not applicable to the situation there presented. Several of our cases were there discussed, and further consideration of these cases is unnecessary.

Appellant cites the case of *Martin v. Westinghouse etc. Co.,* 162 Wash. 150, 297 Pac. 1098, and several other cases. In the case last referred to, it was evident that the disfavored driver, as he entered the intersection, looked to his right and saw approaching the car with which he subsequently collided. The plaintiff was of the opinion that he had time to cross ahead of the approaching car, and this court held that it could not be determined as a matter of law that there was not a

reasonable margin of safety in plaintiff's favor, because if the car had not been exceeding the speed limit, probably such margin of safety would have been sufficient. Upon such a state of facts, the question of whether or not the plaintiff driver failed to act as a reasonably prudent man in his situation would have acted, was for the jury.

In the case of *Thompson v. Fiorito,* 167 Wash. 495, 9 P. (2d) 789, 12 P. (2d) 1119, the disfavored driver, on approaching an intersection, looked to his right and saw an approaching truck over two hundred feet away. After some further observation, he continued along the intersection, and his car was struck by the truck. This court held that the plaintiff had the right to assume that the truck would not exceed the legal speed limit, and that the question of whether or not the plaintiff was justified in attempting to cross ahead of the truck was for the jury.

Appellant also cites the case of *Eggert v. Schumacher,* 173 Wash. 119, 22 P. (2d) 52, in which this court affirmed an order of the superior court granting a new trial after sustaining defendant's motion for a nonsuit. It appeared that the pavement was icy and slippery; that the disfavored driver stopped his car and looked in both directions, seeing no approaching traffic. He then started slowly across the intersection and was struck by the defendant's car approaching from the right. The driver occupying the favored position set his brakes, but his car slid for some distance, striking the car driven by the plaintiff. The trial court, after granting defendant's motion for a nonsuit, changed its mind, and held that, in consideration of the slippery condition of the highway and other matters, a jury question was presented, in which view this court concurred. The case is not controlling here.

Appellant also cites the case of *Gibson v. Spokane*

*United Railways*, 197 Wash. 58, 84 P. (2d) 349, in which this court affirmed a judgment rendered in favor of the plaintiff in an action based upon an automobile collision in a street intersection. It appeared that the plaintiff, the disfavored driver, looked to his right as he entered the intersection and saw no approaching traffic within his range of vision, which was limited to one hundred seventy-five feet, or less, by dust raised by passing cars. There was testimony to the effect that the plaintiff's car had practically cleared the intersection when the defendant's vehicle swerved to its right and struck the plaintiff's car. The case is nowise in point here.

Appellant relies upon the case of *Davis v. Riegel*, 182 Wash. 1, 44 P. (2d) 771, which involved a collision between an automobile and a pedestrian. The trial court held that the plaintiff was guilty of contributory negligence as a matter of law, and granted judgment for defendant notwithstanding the verdict of the jury in favor of plaintiff. This court held that the trial court had erred in ruling in defendant's favor as matter of law. In the course of the opinion, this court said:

"Assuming that she [plaintiff] did not look to the south, and that, if she had looked, she could have seen the automobile, she is charged with notice of what she would have seen, had she looked. The situation would be the same as though she had looked and seen the automobile. *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784. It is immaterial whether she looked or not, if, as a reasonably prudent person, she would have been justified in trying to cross had she looked before starting. *Morris v. Seattle, Renton & Southern Ry. Co.*, 66 Wash. 691, 120 Pac. 534."

Appellant, in his brief, quotes the last portion of the foregoing quotation, but the case is not at all in point here, as, if this appellant had looked and seen the ap-

proaching truck, he certainly, as a reasonably prudent person, would not have been justified in trying to cross the street ahead of it. He himself said that, had he seen the truck in time, he would have stopped.

Appellant argues that the principle of the *Hadenfeldt* case should be extended to cover the facts in the case at bar, contending that appellant looked to his right and saw no approaching traffic from that direction which would constitute a danger to him if the approaching car was proceeding within the speed limit fixed by law. We are not inclined to extend the exception referred to in the case of *Martin v. Hadenfeldt* to such a situation as is here presented.

The burden to avoid colliding with a car approaching from his right rests heavily upon the disfavored driver. A clear and unambiguous statute imposes this burden, and the ingrafting of exceptions upon this sound and wholesome rule of the road would tend only to confusion and lead drivers occupying the disfavored position under the statute to think that they might somehow escape the burden imposed upon them by law and throw the blame for avoidable accidents upon another. Speed is of much less importance than safety, and, under modern traffic conditions, safety, to a great extent, depends upon careful and prudent observation both of natural physical conditions and of other vehicles using the highway, as well as of pedestrians. We are in accord with the rules laid down in the *Hadenfeldt* case, but are not inclined to extend the exception therein provided for.

In the case at bar, appellant relied upon a somewhat restricted view of Fifteenth avenue to his right. A perfectly clear and unobstructed view was available to him after his car advanced only a few feet from where he took the observation upon which he relied. In failing to again look to his right, he was negligent. He did

not bear the burden which rested upon him as the disfavored driver, and the trial court properly so held.

■ Appellant next argues that, conceding that appellant was guilty of contributory negligence, under the doctrine of last clear chance the court should have denied the challenge to the evidence and submitted that question to the jury, upon the theory that, under the first situation of the doctrine of last clear chance, as stated in *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302, a jury question was presented. Whether or not any situation calling for the application of the doctrine of last clear chance is applicable in a given case, is a question of law to be determined by the court. *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Rossier v. Payne,* 125 Wash. 155, 215 Pac. 366. In the case at bar, we find no basis in the record for a holding that any element of the doctrine of last clear chance should be applied.

■ Finally, appellant contends that the trial court erred in sustaining respondent's objection to a portion of the testimony of appellant's witness Robert S. Taylor, an engineer who testified as an expert concerning the length of time it takes to stop cars going at different rates of speed, dividing the matter of making such stops into two factors, one of which is referred to as the "braking distance," and the other as "reaction time," which is explained as the time which elapses between the instant when the driver first sees something which causes him to wish to stop and the instant when he has succeeded in applying his brakes.

Testimony as to the average time of mental reaction is of doubtful value. In any event, the witness testified as to what, in his opinion, is usually considered as a fair reaction time. Assuming that this testimony was admissible, the fact that the court sustained objections

to further questions concerning the same matter cannot be held to constitute reversible error, as the testimony rejected would be merely cumulative, and its admission or rejection largely within the sound discretion of the trial judge. *Sound Timber Co. v. Danaher Lumber Co.*, 112 Wash. 314, 192 Pac. 941; *Girardi v. Union High School Dist. No. 1, ante* p. 21, 93 P. (2d) 298.

Finding no error in the record, the judgment appealed from is affirmed.

STEINERT, GERAGHTY, and SIMPSON, JJ., concur.

BLAKE, C. J., (dissenting)—I dissent. Upon the facts, as stated in the opinion, I think the question of contributory negligence was for the jury.

