[No. 35675.   Department One.   March 16, 1962.]

CARL CHAVERS *et al., Respondents,* v. DAVID OHAD *et al., Appellants.*

* Reported in 369 P. (2d) 831.

*Gavin, Robinson & Kendrick* and *Robert R. Redman,* for appellants.

*Tonkoff, Holst & Hopp,* for respondents.

WEAVER, J.—Plaintiff, the disfavored driver, commenced this action alleging defendant was negligent in (1) driving an automobile at an excessive rate of speed; (2) failing to keep a lookout for other traffic on the highway; and (3) driving at a speed and in a manner that would deceive other users of the highway.

Defendant, whose rights were established by city ordinance, was the favored driver of an automobile involved in an accident at a controlled intersection. He appeals from a judgment entered on the verdict of a jury.

The crux of the appeal is whether there was sufficient evidence of deception to submit the case to the jury under the doctrine popularly known as Rule 4 of the *Hadenfeldt* case. *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533 (1930).

In the city of Yakima, 16th Avenue extends from north to south and intersects Nob Hill Boulevard at a right angle. At the time of the accident, traffic at the intersection was controlled by an automatic flashing traffic signal that was red on 16th Avenue and yellow on Nob Hill Boulevard.

Plaintiff was driving north on 16th Avenue, planning to make a left turn to the west onto Nob Hill Boulevard. She stopped before entering the intersection. ·Defendant was

driving east on the Boulevard. Their automobiles collided at the approximate center of the intersection; defendant's car swung to the left and plaintiff's car to the right; they came to rest, side by side, at the northeast curb line of the intersection with the front of each car approximately 27 feet from the point of impact.

Plaintiff testified:

"A. When I approached Nob Hill, I came to a stop and there was a car coming down east on Nob Hill; I let it go by; I looked up and saw another car coming that *looked to be about a block away* and I looked to my right and *back and it still looked far enough*; I pulled out into the intersection to make a left turn and just as I got the front end pretty well straight in the intersection, we hit." (Italics ours.)

The evidence discloses that it is 325 feet from 16th Avenue to 17th Avenue on Nob Hill Boulevard. As to speed, plaintiff testified:

"Q. Did you notice what its speed was or did you estimate its speed at that time?

"A. It looked like city driving—that's the only—"

Plaintiff subsequently testified she considered "city driving" to be 25 miles per hour.

Plaintiff further testified:

"A. No, I couldn't tell how fast they were going.

"Q. Have you ever made an estimate of the speed at that time?

"A. I said at the time of the impact, from the feel of the impact, that he had to be going at a terrific speed because it was just like an explosion in there.

"Q. Was he going faster or slower or just the same as you had estimated at the time you were stopped and saw him a block away?

"A. That I don't know because *I couldn't tell how fast he was going when I first saw him.*" (Italics ours.)

Defendant testified that he was 30 to 35 feet west of the west crosswalk of the intersection when he first saw plaintiff's car enter the intersection; he identified his position as being "in front of the pump island" of a service station on the southwest corner of the intersection; that he was

traveling 20 to 25 miles an hour; that he "swung my wheel to the left, trying to avoid it [plaintiff's car]."

Two disinterested witnesses, who were in an automobile about 130 feet south of plaintiff's car, testified they saw plaintiff stop, then start into the intersection; that they saw defendant's car "through . . . the pump island"; that defendant was traveling 25 to 30 miles per hour.

The police officer who appeared at the scene of the accident testified that the right rear tire of defendant's car made a 40-foot "pressure mark" on the pavement as the car veered to its left. The "pressure mark" started at the western crosswalk of the intersection and extended to the northeast corner of the intersection where defendant's car stopped after the collision.

The rights of the parties at a street or road intersection are governed by municipal ordinance or by statute. The ordinance of the city of Yakima, applicable to the instant case, provides:

"The operator of a vehicle entering upon an arterial highway, road, street, alley, way or driveway, shall come to a complete stop at the entrance of such arterial highway, and having stopped shall look out for and give right of way to any vehicles upon the arterial highway simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection; . . ."

The ordinance is substantially the same as RCW 46.60.170, set forth in the margin.[1] RCW 46.60.230 provides that a driver approaching a flashing red traffic light shall stop ". . . and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign."

If two cars collide within the intersection, they were simultaneously approaching a given point within the inter-

---

[1]"The operator of a vehicle shall stop as required by law at the entrance to any intersection with an arterial public highway, and having stopped shall look out for and give right of way to any vehicles upon the arterial highway simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection: . . ."

section so that the favored driver under the statute would have the statutory right of way *unless*

"(4) The driver on the left [the disfavored driver] *assumes and meets the burden of producing evidence* which will carry to the jury the question of fact as to whether or no the favored driver on the right *so wrongfully, negligently, or unlawfully* operated his car *as would deceive a reasonably prudent driver* on the left and warrant him in going forward upon the assumption that he had the right to proceed." *Martin v. Hadenfeldt,* 157 Wash. 563, 567, 289 Pac. 533 (1930). (Italics ours.)

Over the past 31 years since the *Hadenfeldt* case was decided, this court has cited or discussed it in more than 80 opinions. During this period 36 judges have been members of this court. The present court is cognizant of the fact that some cases were presented to juries, not upon the salutary requirement of Rule 4 but upon the theory that deception becomes a jury question if there is evidence that the favored driver was exceeding the speed limit by as little as two or three miles an hour. This speed may be sufficient to deny the favored driver recovery against the disfavored driver (a question that is not before us), but we do not believe it sufficient to present a jury question under the doctrine of deception. See *Watson v. Miller, ante* p. 85, 366 P. (2d) 190 (1961).

To review all of the cases would serve no useful purpose. It is doubtful that such a review would wind a skein consistent with every decision.

The right-of-way statute is placed in sharp focus by the statement of the late Judge Beals in *Delsman v. Bertotti,* 200 Wash. 380, 390, 93 P. (2d) 371 (1939):

"The burden to avoid colliding with a car approaching from his right rests heavily upon the disfavored driver. A clear and unambiguous statute imposes this burden, and the ingrafting of exceptions upon this sound and wholesome rule of the road would tend only to confusion and lead drivers occupying the disfavored position under the statute to think that they might somehow escape the burden imposed upon them by law and throw the blame for avoidable accidents upon another. Speed is of much less importance than safety, and, under modern traffic conditions, safety,

to a great extent, depends upon careful and prudent observation both of natural physical conditions and of other vehicles using the highway, as well as of pedestrians. We are in accord with the rules laid down in the *Hadenfeldt* case, but are not inclined to extend the exception therein provided for."

A disfavored driver is entitled to have a jury consider whether he has actually been deceived by the alleged speed of the favored driver if the trial judge decides, as a matter of law, that the disfavored driver has met

". . . the burden of producing evidence [that] . . . the favored driver . . . so wrongfully, negligently, or unlawfully operated his car as would deceive *a reasonably prudent driver* . . ." (Italics ours.)

A mere violation of the speed limit is not sufficient, however; the evidence must show that the speed of the favored driver was so *excessive* that a reasonably prudent driver could have been deceived by it. The trial court must consider whether the evidence discloses that the disfavored driver was merely inattentive to the mandate of the statute or whether he simply took a calculated risk, estimating with a slide-rule eye that he could beat the favored driver through the intersection. In either case, the disfavored driver has not met the burden of proof as a matter of law.

In *Sather v. Blodgett,* 169 Wash. 25, 26, 27, 13 P. (2d) 60 (1932), the court said:

". . . if the Blodgett car had been coming at a speed of not more than twenty-five miles per hour and had entered the intersection at a speed not greater than fifteen miles, he would have had time to clear the intersection before the impact. This is of course but a conclusion, which carries but little weight, and it in no wise takes the place of the exercise of due care to ascertain at what speed the Blodgett car was approaching. . . .

". . .

". . . Since appellant produced no evidence to indicate that respondent 'so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver' in his (appellant's) position, there was no question to go to the jury."

We turn now to evidence of the instant case.

■ The rule applicable is succinctly stated in *Gavin v. Everton,* 19 Wn. (2d) 785, 789, 144 P. (2d) 735 (1944):

". . . We have no other rule than that it is a question of law only when it can be said that reasonable minds could not differ on the issue. *The particular facts in each case must control that question.* This must necessarily be so, since, if we say that it is always a question of law to determine when the disfavored driver falls under rule four, it would be tantamount to striking the function of the jury completely out of rule four. On the other hand, if we say that an issue under rule four is always and invariably a question for the jury, it would be the equivalent of saying that facts could not exist so extreme in nature that it could be said, as a matter of law, that all reasonable minds must agree. Neither of these positions is sound. See *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265.

"The question in this case is: Was the situation so obviously dangerous that a prudent driver would not have been deceived into believing that he had a reasonable margin of safety in crossing the intersection? . . ." (Italics ours.)

■ Plaintiff's claim that she was deceived by defendant's excessive speed is based upon two hypotheses.

First: Her testimony that

"I said at the time of the impact, from the feel of the impact, that he had to be going at a terrific speed because it was just like an explosion in there."

we deem insufficient. In *Jamieson v. Taylor,* 1 Wn. (2d) 217, 223, 95 P. (2d) 791 (1939), the court answered a similar contention:

"The designation of the speed as 'terrific,' made under the stress and confusion of the sudden and dangerous position in which appellant found himself, was in its very nature largely conjectural and lacked the certainty and precision necessary to impart a knowledge of any definite rate of speed."

Second: Plaintiff testified that when she stopped and looked to her left, defendant's car "looked to be about a block away."

She then testified: ". . . and I looked to my right

and *back and it still* looked far enough; . . ." (Italics ours.)

There was no established evidence that defendant was a block away *when plaintiff started into the intersection.* She urges, however, that the jury may infer from a calculation of time and distance that defendant had to be traveling at an excessive speed to have reached the point of impact. The inference is not justified because positive evidence of defendant's speed was established by disinterested witnesses.

In view of this evidence, we conclude, as a matter of law, that plaintiff took a calculated risk and did not sustain the burden of proving that the favored driver was operating his vehicle "so wrongfully, negligently, or unlawfully" as would deceive a reasonably prudent driver.

Our conclusion is buttressed by two additional facts: (1) the short distance the cars traveled after the impact, and (2) the damage done to both cars, as illustrated by photographs in evidence.

*Fazio v. Eglitis,* 54 Wn. (2d) 699, 344 P. (2d) 521 (1959), does not detract from our conclusion. The position of defendant's car was definitely fixed at the top of a viaduct incline, approximately 480 feet from the intersection. Defendant's speed was at least 60 miles an hour. His car made skid marks (as distinguished from pressure marks) for 110 feet, prior to impact, and came to rest 40 or 50 feet therefrom. In such circumstances, deception was a jury question.

Defendant's challenge at the end of all of the evidence should have been sustained. The judgment is reversed and the case remanded, with instructions to dismiss.

ROSELLINI and FOSTER, JJ., concur.

FINLEY, C. J., concurs in the result.

ROSELLINI, J. (concurring specially)—I concur with the majority that the disfavored driver did not sustain the burden of proving that the favored driver so wrongfully, negligently, or unlawfully operated his vehicle as to deceive a reasonably prudent driver. However, I cannot agree that

excessive speed, by itself, could amount to such deception as to afford a disfavored driver relief under rule (4) of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533.

The reports do contain cases in which liability has been cast upon the favored driver because he exceeded the speed limit. I do not think that such cases fall within the proper scope of rule (4), p. 567, of the *Hadenfeldt* case.

The right-of-way statute RCW 46.60.150 (which is substantially the same as the Yakima ordinance) is plain, clear, and unambiguous. It provides:

"Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not: . . ."

Rule (4) of the *Hadenfeldt* case exonerates the driver on the left if he

" . . . assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

The essence of the rule is deception. Excessive speed is observable and can only deceive the disfavored driver if the speed of the vehicle on his right is increased after he has observed it and while he is looking to the left. In all other cases the observer is mistaken, or misjudges the rate of speed at which the vehicle is moving. This misjudgment of speed and wrong estimate of the time in which it would take the vehicle to reach the intersection should not be equated with deception.

In other operations of a motor vehicle, the operator is charged with a positive duty to observe correctly and to make correct judgments of speed; for example, in following another car, in passing another car, and in bringing his vehicle to a stop.

A disfavored driver should not be heard to say that speed, except in a change of pace situation, has deceived him and caused him to make a false determination that he had a margin of safety in clearing an intersection. Otherwise, we nullify the rule that if two cars collide within an intersection, they were simultaneously approaching a given point within the intersection so that the favored driver has the statutory right-of-way.

The late Judge Beals in *Delsman v. Bertotti*, 200 Wash. 380, 390, 93 P. (2d) 371, elucidates the right-of-way statute as follows:

"The burden to avoid colliding with a car approaching from his right rests heavily upon the disfavored driver. A clear and unambiguous statute imposes this burden, and the ingrafting of exceptions upon this sound and wholesome rule of the road would tend only to confusion and lead drivers occupying the disfavored position under the statute to think that they might somehow escape the burden imposed upon them by law and throw the blame for avoidable accidents upon another. Speed is of much less importance than safety, and, under modern traffic conditions, safety, to a great extent, depends upon careful and prudent observation both of natural physical conditions and of other vehicles using the highway, as well as of pedestrians. We are in accord with the rules laid down in the *Hadenfeldt* case, but are *not inclined to extend the exception therein provided for*." (Italics mine.)

I would hold that a mere showing of excessive speed of the favored driver is not sufficient to sustain a finding that the disfavored driver was deceived, and that there must be some evidence that the rate of speed was changed in such a way as actually to deceive him.

———————

May 18, 1962. Petition for rehearing denied.