[No. 36459.    En Banc.    June 20, 1963.]

MANLEY B. HAVERLY, *Respondent,* v. DAVID W. FUNSTON
*et al., Appellants.**

* Reported in 382 P. (2d) 1009.

*Cartano, Botzer & Chapman,* by *Stephen C. Watson,* for appellants.

*Gordon, Goodwin, Sager & Thomas,* by *Albert R. Malanca,* for respondent.

HUNTER, J.—This is an appeal from a judgment upon a jury verdict in favor of a disfavored driver, arising from a collision in an uncontrolled intersection in the city of Tacoma.

The plaintiff (respondent), who was proceeding east on 45th street, entered the intersection of 45th street and south "D" street, driving slowly, according to his testimony, at a speed of probably 12 and not more than 15 miles an hour. Mr. Funston, one of the defendants (appellants), was driving north on south "D" street. He had entered onto south "D" street two blocks south of the collision intersection, and in doing so he swung in front of one Lee Gardner, who was traveling north on south "D" street, without stopping or slowing down. Mr. Gardner followed Mr. Funston along south "D" street and witnessed the collision.

The favored driver, Mr. Funston, testified that, as he came to the intersection immediately south of the collision intersection, he slowed down to approximately 25 miles per hour; that he then increased his speed to approximately 30 to 35 miles per hour, but that he slowed down to 25 miles per hour before reaching 45th street. Mr. Gardner testified that, as Mr. Funston approached 45th street, he was accelerating his speed and that he entered the collision intersection at a high speed, without having slowed down, which he approximated at 40 miles an hour. (The speed limit for the residential area in which the accident occurred was 25 miles per hour, except at obstructed intersections where it was 20 miles per hour.) Mr. Gardner further testified that he saw the Haverly car very slowly pull out into the intersection when Mr. Funston was a block away (he also later testified it was one-half to one-fourth of a block

away), at which time he feared the Haverly car would not clear the intersection.

The view of each driver was interfered with to some extent by a city light pole, a car or two, and a raised front yard situated somewhat back from the street on the southwest corner of the intersection. The plaintiff, who was the disfavored driver, testified that he looked to his right (whether at the curb line or the middle of the west lane of south "D" street is controverted) and noticed the defendants' car approaching about one-half way down the block, which was approximately 250 feet away as this was a 500-foot block. He testified that the car appeared to be traveling at a normal rate of speed and that he believed he had sufficient time to proceed through the intersection. Under this belief, he continued without again looking to the right. The collision occurred at a point just to the east of the center of the intersection, the defendants' car striking the right side of the plaintiff's car.

Before the trial the defendants moved for and were denied a summary judgment. At the trial, the defendants moved to dismiss the case at the close of the plaintiff's evidence on the ground that the plaintiff had not avoided the allegation of his contributory negligence as a disfavored driver by showing that he had been deceived. This motion was also denied. After the trial, the defendants moved for a judgment n.o.v. or, alternately, for a new trial but, again, both motions were denied. Thereupon, the defendants commenced this appeal.

The sole issue before us is whether the disfavored plaintiff was contributorily negligent, as a matter of law, and therefore barred from recovery.

The rights of the parties at a street or road intersection are governed by municipal ordinance or by statute. The applicable ordinance of the city of Tacoma provides:

"It shall be the duty of every operator of any vehicle on approaching public highway intersections to look out for and give right-of-way to vehicles on his right, simultaneously approaching a given point within the intersection, whether such vehicle first enter and reach the inter-

section or not; provided, this section shall not apply to operators on arterial public highways."

The applicable state statute is RCW 46.60.150:

"Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not: *Provided,* That this section shall not apply to operators on arterial highways or to vehicles entering an intersection which is posted with the 'Yield Right of Way' sign."

■ The deception rule, originally set forth as rule (4) in *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533 (1930), is explained in *Chavers v. Ohad,* 59 Wn. (2d) 646, 369 P. (2d) 831 (1962) as follows:

"If two cars collide within the intersection, they were simultaneously approaching a given point within the intersection so that the favored driver under the statute would have the statutory right of way *unless*

" '(4) The driver on the left [the disfavored driver] *assumes and meets the burden of producing evidence* which will carry to the jury the question of fact as to whether or no the favored driver on the right *so wrongfully, negligently, or unlawfully* operated his car *as would deceive a reasonably prudent driver* on the left and warrant him in going forward upon the assumption that he had the right to proceed.' *Martin v. Hadenfeldt,* 157 Wash. 563, 567, 289 Pac. 533 (1930)." (Italics and insertion by the court.)

The defendants contend that the plaintiff failed to produce sufficient evidence on the issue of deception to merit the question being submitted to the jury. They argue that, although evidence relating to speed was introduced, the plaintiff did not show that the speed was so excessive that a reasonably prudent driver would have been deceived by it. On the contrary, they contend the evidence shows that the plaintiff was merely inattentive to the statutory mandate that he yield the right-of-way or, in the alternative, that the plaintiff took a calculated risk that he could beat the favored driver through the intersection.

The plaintiff testified:

"Q As you approached the intersection of Forty Fifth and 'D' Street, will you tell the jury just what you did? A Well, I came up to the intersection driving slow. Q How fast? A Oh, probably twelve or fifteen miles, I don't think it was over twelve miles, it might have been fifteen. Well, I could always see to my left, so I looked to my right and I seen some activity on the street, a car coming. Q Where was the car when you first saw it? A Well, it was at least half way down the block when I saw it. Q Half way down the block? A Yes. . . . Q All right, and at that point how was this car that you saw half way down the block, how did it appear to you? A *Well, about normal, just another car as far as I could tell coming.* Q What did you do then? A Well, I just stepped on the gas and went on through. *I knew I had plenty of time to go through.* . . ." (Italics ours.)

As to Mr. Funston's driving conduct, Mr. Gardner, the driver who followed him up "D" street, testified as follows:

"A At Forty Sixth [sic] and 'D' the 1941 Chevrolet [defendants'] pulled on to 'D' Street from Forty Sixth [sic] going at a high rate of speed directly in front of my car, and I applied the brakes and came to a full stop. . . . Q All right, now, then after he got on to 'D' Street what happened, what did you do. A Well, I was a little upset over it because we came so close to having an accident that I was going to follow him, I don't know why but I did and having my eye right on his car I saw the green Dodge [plaintiff's] pull out a block ahead of him, and going very slowly, in fact I said to myself at that time that if he didn't speed up he will never make it and he didn't. The 1941 Chevrolet continued at a fast rate of speed. Q Now, lets get this straight, you were behind Mr. Funston and his 1941 Chevrolet, right? A On 'D' Street, yes. Q How fast were you going when you were behind him on 'D' Street? A I came to a full stop at the intersection of Forty Fifth and 'D'; and then picked up speed, I had a hydromatic and I was in high gear if I was going over twenty-miles an hour. Q At that point was Mr. Funston traveling faster than you? A *He was moving away from me, yes.* Q *He was accelerating as you were going up?* A *Yes.* . . ." (Italics ours.)

In considering this testimony together with the facts as stated in this opinion, we are mindful of *Chavers v. Ohad, supra,* in which we said:

"A mere violation of the speed limit is not sufficient, however; the evidence must show that the speed of the favored driver was so *excessive* that a reasonably prudent driver could have been deceived by it. The trial court must consider whether the evidence discloses that the disfavored driver was merely inattentive to the mandate of the statute or whether he simply took a calculated risk, estimating with a slide-rule eye that he could beat the favored driver through the intersection. In either case, the disfavored driver has not met the burden of proof as a matter of law."

This case, however, does not turn on the issue of whether speed alone was so excessive as to deceive a disfavored driver. The jury could have concluded, from the evidence, that the plaintiff slowly entered the intersection and observed the defendants' car a distance of 250 feet or more away; that the defendants' car appeared to be traveling at a normal rate of speed; that, as a prudent driver, it was reasonable for the plaintiff to believe he could clear the intersection with a fair margin of safety; and that the defendant, Funston, accelerated his speed thereafter, causing the plaintiff to be deceived in his belief. This evidence was sufficient to raise a jury question on the issue of deception.

The defendants also contend that the plaintiff could not have been deceived into failing to yield the right-of-way since, at the time he first saw the defendants' car, he was so committed to his subsequent course of conduct that he could not have extricated himself.

This contention is without merit in view of the slow speed at which the record shows the plaintiff was proceeding. The jury reasonably could have concluded, from the evidence, that the plaintiff had sufficient control of his automobile to have yielded the right-of-way had he deemed it necessary to do so. The trial court was correct in denying the defendants' motions.

The judgment is affirmed.

OTT, C. J., FINLEY, ROSELLINI, and HAMILTON, JJ., concur.

HILL, J. (dissenting)—I dissent. This is an uncontrolled intersection collision case. As the majority point out, the

excessive speed of the defendant-driver is conceded, and the sole issue is whether the plaintiff (the disfavored driver) was contributorily negligent, as a matter of law, and therefore barred from recovery.

No citation of authority is necessary to establish that, by his failure to yield the right of way, the plaintiff was contributorily negligent, as a matter of law, unless he could establish that he had been "deceived" by the defendant-driver's wrongful, negligent, or unlawful operation of his car into assuming that he (the disfavored plaintiff) had the right to proceed across the intersection.

After quoting the statute, and the "deception" rule, as originally set forth in rule (4) in *Martin v. Hadenfeldt* (1930), 157 Wash. 563, 289 Pac. 533, the majority conclude that a jury could find that the disfavored plaintiff had been deceived into assuming that he had the right to proceed across the intersection. The majority say:

" . . . The jury could have concluded, from the evidence, that the plaintiff slowly entered the intersection and observed the defendants' car a distance of 250 feet or more away; that the defendants' car appeared to be traveling at a normal rate of speed; that, as a prudent driver, it was reasonable for the plaintiff to believe he could clear the intersection with a fair margin of safety; and that the defendant, Funston, accelerated his speed thereafter, causing the plaintiff to be deceived in his belief. This evidence was sufficient to raise a jury question on the issue of deception."

On any analysis of the evidence all must agree that the cars were, in the words of the statute,[1] "simultaneously approaching a given point within the intersection." It is also certain that the plaintiff did not obey that statute "and give right of way to vehicles on his right."

---

[1]"Right of way on approaching intersections. Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not: *Provided,* [proviso not relevant in this case]" RCW 46.60.150.

The court, and not the legislature, has added to the completely objective test of a violation of this statute, *i.e.,* a collision in the intersection, an exception based on the almost purely subjective test of deception. This is popularly known as "rule 4 of the *Hadenfeldt* case" and is quoted in the majority opinion.

In *Chavers v. Ohad* (1962), 59 Wn. (2d) 646, 369 P. (2d) 831, we commented that in 31 years rule 4 had been discussed in more than 80 cases; and this case makes at least the third since the *Chavers* case a year ago. It is my view that, if the best that can be said about the circumstances is that they make a jury question on the issue of the deception of the disfavored driver, the statute ought to be applied as the legislature has written it and the favored driver given the benefit of his statutory right of way. The matter of who has the right to proceed through an intersection should not be a matter of opinion, and any doubt should be resolved against the disfavored driver. Only when reasonable minds cannot fail to reach the conclusion that the disfavored driver should have proceeded across the intersection should he be entitled to recover when he collides in the intersection with a favored driver. (I, of course, exclude the situations covered by the doctrine of last clear chance.)

However, the present case, in my opinion, does not even present a case for a jury under our judicially legislated exception to the statute. The testimony as to distances and speed cannot be reconciled with a conclusion by a reasonably prudent and cautious disfavored driver that he had a reasonable margin of safety.

In demonstrating this I shall use no estimates but those of the plaintiff and his witness and, in every instance, take the estimate most favorable to him.

The plaintiff approached the intersection at a speed of 12 to 15 miles per hour, saw the defendants' car at least half a block away (250 feet), and "stepped on the gas and went on through." I disregard, as being unfavorable to him, his testimony that his car "picked up pretty fast,"

and that at the time of the impact he was going "probably fifteen or twenty miles" an hour.[2] At the slowest speed he suggests (12 miles an hour), he would have traveled 44 feet, have crossed the 36-foot street and gotten all of his car across the traveled portion of the street and out of danger in two and one-half seconds. Let us now consider where the defendant must have been when the plaintiff made his observation and started across the intersection for their cars to collide in that intersection—which they certainly did. If the defendant was traveling 40 miles an hour (the highest speed supported by the evidence), he had to be less than 150 feet south of the intersection. If the jury is entitled to disregard the testimony and assume that maybe the defendant was traveling 50 miles an hour, he would have had to be less than 185 feet south of the intersection; and if we permit 50 per cent speculation over evidence and assume a speed of 60 miles an hour, he had to be less than 220 feet south of the intersection.

This puts the plaintiff in the split-second timing classification of cases such as *Parks v. Farber* (1962), 59 Wn. (2d) 656, 369 P. (2d) 836; *Chavers v. Ohad* (1962), 59 Wn. (2d) 646, 369 P. (2d) 831; *Plenderlieth v. McGuire* (1947), 27 Wn. (2d) 841, 180 P. (2d) 808; *Billingsley v. Rovig-Temple Co.* (1943), 16 Wn. (2d) 202, 133 P. (2d) 265; *Emanuel v. Wise* (1941), 11 Wn. (2d) 198, 118 P. (2d) 969.

If the fact that the disfavored plaintiff really thought he could make it across the intersection ahead of the favored driver is sufficient to take the issue of deception to the jury under rule (4), we have no right-of-way rule because every disfavored plaintiff really thinks he is going to make it.

The majority emphasize that there was deception in that the defendant-driver had increased his speed after the plaintiff saw him.

---

[2]The faster the plaintiff traveled the less time he would be in the intersection, and the faster the defendant would have had to travel the 250 feet from where the plaintiff saw him to the point of impact.

If the defendant had to accelerate to reach the speeds I have indicated after the plaintiff saw him, then, of necessity, he was considerably closer to the intersection than the distances I have indicated.

Judge Rosellini in his concurring opinion in *Chavers v. Ohad, supra,* said:

"The essence of the rule is deception. Excessive speed is observable and can only deceive the disfavored driver if the speed of the vehicle on his right is increased after he has observed it and while he is looking to the left. In all other cases the observer is mistaken, or misjudges the rate of speed at which the vehicle is moving. This misjudgment of speed and wrong estimate of the time in which it would take the vehicle to reach the intersection should not be equated with deception." *Id.* at 654, 369 P. (2d) 835-836.

The jury could well have found that the nice old gentleman (the plaintiff) really thought he had a fair margin of safety and that the defendant was a sharp-turning, freewheeling, arrogant fellow who should be taught a lesson; but there is no combination of speed, acceleration and distance that can get the plaintiff out of the split-second-timing classification which equates contributory negligence. This is one of those hard cases that will make bad law.

DONWORTH and WEAVER, JJ., and DAWSON, J. Pro Tem. concur with HILL, J.

August 9, 1963. Petition for rehearing denied.