[No. 38829.    Department One.    May 18, 1967.]

ARLAN FROEMMING, *Respondent,* v. SPOKANE CITY LINES
*et al., Appellants.**

*Paine, Lowe, Coffin, Herman & O'Kelly (Edwin R. Rob-erts,* of counsel), for appellants.

*Clarence M. George,* for respondent.

ARMSTRONG, J.†—This action results from an automobile and city bus collision at the intersection of Crestline Street

*Reported in 427 P.2d 1003.

---

†Judge Armstrong is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

and Rowan Avenue in the city of Spokane, Washington. Crestline Street is an arterial street running north and south, and Rowan Avenue intersects Crestline and runs generally east and west.

The plaintiff (respondent), Arlan Froemming, was driving his 1961 Chevrolet station wagon in a northerly direction on Crestline Street. Defendant (appellant), Joseph Campbell, a bus driver for defendant (appellant), Spokane City Lines, was driving the Spokane City Lines bus in a westerly direction on Rowan Avenue. The collision occurred within the confines of the intersection of Crestline Street and Rowan Avenue. Defendant Campbell will be referred to as though he were the sole defendant.

On September 19, 1964, at approximately 10 p.m., defendant Campbell was driving a bus equipped with an automatic transmission. The bus weighed approximately 17,000 pounds and was 35 feet long. It was a dark night and raining slightly. Defendant brought his bus to a complete stop at the intersection with the arterial street. When defendant first saw plaintiff's automobile it had just entered an intersection one block south, a distance of approximately 330 feet. Defendant knew that the speed limit on the arterial street was 30 miles per hour and he presumed that the plaintiff was driving the speed limit. On observing plaintiff's automobile one block away defendant "started across that instant." Defendant admitted that he had no more than a fleeting glimpse of plaintiff's car and that no more than a second elapsed before he started across the intersection. On cross-examination defendant admitted that he was not able to form an intelligent judgment or opinion of plaintiff's speed.

When defendant had proceeded approximately one-third the way into the center of the intersection he saw plaintiff's lights coming up fast and then estimated his speed to be about 50 to 60 miles per hour. Defendant then hit the foot feed and accelerated the bus trying to get out of the way. The point of the impact was within the intersection. The front end of plaintiff's car struck the left rear side of the bus, near the exit door.

The impact caused extensive damage to both vehicles and rattled windows in a home located on the northeast corner of the intersection. The entire front end of plaintiff's car was pushed back 3 feet, the frame was buckled and bent, the windshield and instrument panels were demolished, and the front body pillars were bent back so as to bend and buckle the roof panel of the car. The left side of the bus frame of defendant's bus was bent in approximately 6 inches from the force of the impact, and the right side of the bus was buckled out approximately 6 inches from the force of the impact.

As plaintiff's car traveled the last block prior to the collision it was observed by a disinterested witness, Wilfred Thorsness, who was standing in the backyard of his home located on the southeast corner of the accident intersection. He observed the car as it passed a point midway in the last block the plaintiff covered. He heard the car make a swish on the wet pavement as it passed him and estimated plaintiff's speed in excess of 50 miles per hour. On cross-examination he admitted that the car was in his vision for only a distance of approximately 25 feet, and that his estimate of plaintiff's speed was based upon a very fast one second fleeting glimpse. His back was to the intersection and he did not see the collision.

Plaintiff was unable to assist in determining his speed because he received a cerebral concussion, was knocked unconscious, and suffered a loss of memory. His last recollection of anything was turning onto the arterial street seven blocks away. He had no further independent recollection until the next day at the hospital.

Between approximately 8:45 and 9:30 p.m., the plaintiff had two drinks of bourbon and water and ate a sandwich. There was evidence that plaintiff had a smell of alcoholic beverage on his breath and his eyes were bloodshot and watery. He was belligerent and uncooperative with the police and hospital personnel that night. His doctor testified that the drinking had little or nothing to do with plaintiff's actions in this respect. He had suffered a severe blow to the

head and was bleeding profusely through the mouth caused by cuts to both his upper and lower lips.

While there was no evidence of skid marks laid down by plaintiff's car, the investigating police officers testified that it was possible that they would have been obliterated by the wet pavement by the time they arrived. The witness Thorsness did not hear the application of brakes.

Plaintiff commenced this action to recover damages for personal injuries and automobile damages, and defendant Spokane City Lines counter-claimed for damages to its bus. The trial court ruled as a matter of law that the defendant driver was negligent by reason of his failure to yield the right of way to plaintiff's vehicle. The question of whether or not such negligence was a proximate cause of the injuries and damages suffered by either party as a result of the collision was left for the termination of the jury. Also left to the jury was the question of contributory negligence on the part of the plaintiff.

The jury returned its verdict for plaintiff and awarded substantial damages. Defendant's motion for new trial, or in the alternative, for judgment notwithstanding the verdict was denied by the trial court.

Defendant's six assignments of error on appeal basically raise two issues: (1) Did the trial judge properly rule as a matter of law that defendant was guilty of negligence in failing to yield the right of way to plaintiff? (2) Was the plaintiff guilty of negligence as a matter of law?

We shall first consider the question of whether the trial court was in error in ruling that the defendant bus driver was guilty of negligence as a matter of law when he proceeded into the intersection in question.

Plaintiff in this intersection collision was traveling on an arterial thoroughfare and was therefore the favored driver, while defendant bus driver was traveling on an intersecting non-arterial street, and was therefore the disfavored driver. The case is governed by the statutory provisions of RCW 46.60.170 which reads in part:

The operator of a vehicle shall stop as required by law at the entrance to any intersection with an arterial public

highway, and having stopped shall look out for and give right of way to any vehicles upon the arterial highway simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection: . . . .

This statute must be interpreted and applied in the light of the familiar rules first laid down and enunciated in the landmark case of *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533 (1930). Although the *Martin* case involved a collision at an uncontrolled intersection, we have held that the rules set forth therein are applicable to arterial intersections. See *Pollard v. Rossoe Mfg. Co.*, 56 Wn.2d 862, 355 P.2d 979 (1960); *Chavers v. Ohad*, 59 Wn.2d 646, 369 P.2d 831 (1962); and *Novis v. Tipton*, 63 Wn.2d 473, 387 P.2d 737 (1963).

If two cars collide within the intersection, they were simultaneously approaching a given point within the intersection so that the favored driver under the statute would have the statutory right of way *unless*

"(4) The driver on the left [the disfavored driver] *assumes and meets the burden of producing evidence* which will carry to the jury the question of fact as to whether or no the favored driver on the right *so wrongfully, negligently, or unlawfully* operated his car as *would deceive a reasonably prudent driver* on the left and warrant him in going forward upon the assumption that he had the right to proceed." *Martin v. Hadenfeldt*, 157 Wash. 563, 567, 289 Pac. 533 (1930). *Chavers v. Ohad, supra*, at 649.

The defendant bases his claim of error upon the trial court's refusal to apply this last exception.

■ The rule regarding deception of the disfavored driver was reviewed in *Mondor v. Rhoades*, 63 Wn.2d 159, 167, 385 P.2d 722 (1963), wherein we held that the deception rule is limited to extreme cases in which the disfavored driver is able to demonstrate that the favored driver "so wrongfully and negligently operated his car as to create a deception tantamount to an entrapment, a deception of such marked character as to lure a reasonably prudent

driver into the illusion that he had a fair margin of safety in proceeding into the intersection and on through it."

It will be observed that the deception rule prescribes standards of care for both drivers. Two general requirements must be met before it will be applied: (1) There must be a "reasonably prudent" disfavored driver who is (2) deceived by the wrongful and negligent actions of the favored driver, which create a situation tantamount to entrapment. The disfavored driver must show proof of both before the defense may be presented as a question for the jury.

The evidence in this case discloses that defendant Campbell stopped at the arterial intersection and noticed the lights of plaintiff's car a block away. His estimate of plaintiff's speed was based solely on the fact that he "presumed that he [plaintiff] was . . . driving the speed limit, which was 30 . . . ." There was no more than a fleeting glimpse for defendant started across the intersection "that instant." He further stated that no more than a second elapsed before he started across.

■ That part of the deception rule which relates to the standard of care of the disfavored driver requires that he introduce testimony to the effect that he had an opportunity to observe and form an intelligent judgment of the speed of the favored driver, and that he actually did so. *Charlton v. Baker,* 61 Wn.2d 369, 378 P.2d 432 (1963); see also *Bowen v. Odland,* 200 Wash. 257, 93 P.2d 366 (1939). Defendant Campbell's estimate of plaintiff's speed, based on a fleeting glimpse, immediately followed by his driving a slow-moving bus into the intersection, does not justify a claim of deception. It is clear from defendant's own testimony that he did not have time to observe and form an intelligent judgment of plaintiff's speed.

The evidence in this case discloses a mere mistake of judgment on the part of the disfavored driver and not deception. Consequently, the trial court was correct in refusing to submit to the jury the question of deception and in ruling that the defendant was negligent as a matter of law.

■ Defendant's second contention is that the trial court should have dismissed the plaintiff's case because plaintiff was guilty of contributory negligence as a matter of law. Defendant properly concedes that in ruling on his motion to this effect and on the motion for judgment notwithstanding the verdict, the trial court was under a duty to view the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff; and that the trial court could only grant such motions if it could hold, as a matter of law, that there was no evidence or reasonable inference therefrom to sustain a verdict for the nonmoving party. *Frasch v. Leedom*, 62 Wn.2d 410, 383 P.2d 307 (1963); *Hansen v. Pauley*, 67 Wn.2d 345, 407 P.2d 811 (1965).

Defendant bases his contention that plaintiff was guilty of contributory negligence as a matter of law upon evidence of the latter's consumption of intoxicating liquor, his alleged failure to take evasive action to avoid the bus in the intersection, and the extent and severity of damage caused by the impact.

The amount of intoxicants consumed by plaintiff, together with the testimony of the attending physician that the drinking had little or nothing to do with plaintiff's condition and reactions after the collision were factors indicating a factual dispute; clearly reasonable minds could differ upon whether the drinking had any effect on plaintiff's driving. The estimates of speed by defendant Campbell and witness Thorsness could be challenged on the basis of their limited opportunities to make a careful judgment of plaintiff's speed. The damage to the defendant's bus cannot be said to be conclusive evidence of excessive speed. One could argue that there was evidence of plaintiff's failure to apply his brakes or take evasive action, but that too was not conclusive.

We have often considered the question of when and whether a trial judge could determine that a plaintiff was contributorily negligent as a matter of law. Recently in *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 426, 397 P.2d 857 (1964), we said:

In reviewing this question, we are bound by the oft-cited and quoted rule that we must accept as true that view of the evidence most favorable to plaintiffs, and must bear in mind the admonition first enunciated in *McQuillan v. Seattle*, 10 Wash. 464, 465, 38 Pac. 1119, that:

". . . Generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury. [citing cases]

"There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law, . . . The first is where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances. [citing cases] And the second is where the facts are undisputed and but one reasonable inference can be drawn from them. [citing authorities] If different results might be honestly reached by different minds then negligence is not a question of law, but one of fact for the jury. [citing case]"[1]

The sum total of all the evidence relating to the alleged contributory negligence of the plaintiff establishes a case for submission of the issue to the jury, but it is not conclusive, and can only lead one to a determination that reasonable minds could differ upon whether plaintiff was guilty of such negligence. Resolution of the question was the function of the jury, and the trial court was correct in submitting it to them.

Finding no error, the judgment of the trial court is affirmed.

FINLEY, C. J., HILL, WEAVER, and HALE, JJ., concur.

---

[1] For a discussion of the respective roles of the court and the jury with regard to contributory negligence see also *Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965), wherein we held that finding a favored driver free from contributory negligence as a matter of law and refusing to submit the question to the jury was error.